FILED - WESTERN DIVISION
CLERK, U.S. DISTRICT COURT

OCT 2 1 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

RONALD OINES (SBN #145016)
roines@rutan.com
RUTAN & TUCKER, LLC
611 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-1931
Telephone: (714) 641-5100
Facsimile: (714) 546-9035

RANDOLPH C. FOSTER (OSB #784340)
rcfoster@stoel.com
(pro hac vice)
STEVEN E. KLEIN (OSB #051165)
seklein@stoel.com
(pro hac vice)
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

Attorneys for Plaintiff
JIPC Management, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIPC MANAGEMENT, INC., | Case No. **CV08-04310 MMM (PLAx)** |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** |
| v. | |
| INCREDIBLE PIZZA CO., INC. and INCREDIBLE PIZZA FRANCHISE GROUP, LLC; | **(1) FEDERAL TRADEMARK INFRINGEMENT;** |
| Defendants. | **(2) FEDERAL UNFAIR COMPETITION;** |
| | **(3) CALIFORNIA TRADEMARK INFRINGEMENT;** |
| | **(4) COMMON LAW TRADEMARK INFRINGEMENT; AND** |
| | **(5) CALIFORNIA TRADE NAME INFRINGEMENT;** |
| | **DEMAND FOR JURY TRIAL** |

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF

-1-

Portlnd2-4702177 2 0061355- 00004

1    Plaintiff JIPC Management, Inc., for its Complaint against defendants

2    Incredible Pizza Co., Inc. and Incredible Pizza Franchise Group, LLC hereby

3    alleges as follows:

## I. PARTIES

5    1.    Plaintiff JIPC Management, Inc. ("JIPC") is a California corporation

6    with a principal place of business at 1 Orchard Road, Suite 135, Lake Forest,

7    California 92630.  JIPC's business is the licensing and management of restaurants

8    offering all-you-can-eat buffets of pizza, pasta, salad, and dessert, in an

9    entertainment complex featuring theme rooms, video games, redemption games,

10   miniature golf, bumper cars, and go-karts under the distinctive JOHN'S

11   INCREDIBLE PIZZA CO. and INCREDIBLE PIZZA CO. marks, among others.

12   2.    On information and belief, defendant Incredible Pizza Co., Inc.

13   ("IPC") is a Missouri corporation with a principal place of business at 1835 E

14   Republic Road, Suite 102, Springfield, Missouri 65804.  IPC's business is, on

15   information and belief, the management of restaurants offering all-you-can-eat

16   buffets of pizza, pasta, salad, and dessert, in an entertainment complex featuring

17   theme rooms, video games, redemption games, miniature golf, bumper cars, and

18   go-karts under the infringing INCREDIBLE PIZZA COMPANY, INCREDIBLE

19   PIZZA.COM and AMERICA'S INCREDIBLE PIZZA COMPANY marks.

20   3.    On information and belief, defendant Incredible Pizza Franchise

21   Group, LLC ("IPFG") is a Missouri limited liability company with a principal place

22   of business at 2772 S Campbell Avenue, Springfield, Missouri 65807.  IPFG is, on

23   information and belief, the franchising arm of IPC.  According to IPFG's literature,

24   IPFG is, on information and belief, in the business of franchising family

25   entertainment centers including an all-you-can-eat buffet, themed dining, private

26   party rooms, and an entertainment area containing games, rides, and attractions that

27   will operate under the name INCREDIBLE PIZZA COMPANY.

28

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF                    -2-

Portlnd2-4702177 2 0061355- 00004

## II. JURISDICTION AND VENUE

4.     This is an action arising under the federal Lanham Act, 15 U.S.C. §§ 1051-1127. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity of citizenship), 15 U.S.C. § 1121 (actions arising under the Lanham Act), and 28 U.S.C. § 1338 (acts of Congress relating to trademarks and unfair competition).

5.     The Court has personal jurisdiction over defendants because they transact business in California and have purposefully directed their activities at California or its residents and JIPC's claims arise out of those activities.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## III. FACTS COMMON TO ALL COUNTS

**A.     JIPC's Trademark Rights.**

7.     JIPC owns the following and other federally registered service marks, which were granted by the U.S. Patent and Trademark Office (the "USPTO") and appear on its Principal Register:

| Mark | Reg. No. | Reg. Date | Services |
|------|----------|-----------|----------|
| JOHN'S INCREDIBLE PIZZA CO. | 3,025,377 | 12/13/2005 | International Class ("IC") 43: Restaurant services |
| JOHN'S INCREDIBLE PIZZA CO. | 3,058,427 | 02/14/2006 | IC 41:  Entertainment services, namely, providing play areas, miniature golf, laser tag, electric go-karts, bumper cars, bowling, arcade games, prize redemption games, and arcade rides; providing coin-operated video games in the nature of an amusement arcade; providing continuous music video, prerecorded video broadcasts via television; and providing live entertainment in the nature of karaoke contests |

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF

-3-

Portlnd2-4702177.2 0061355- 00004

| Mark | Reg. No. | Reg. Date | Services |
|---|---|---|---|
| ~~JOHN'S INCREDIBLE PIZZA CO. ALL YOU CAN EAT FOOD & FUN (and design)~~ | ~~3,061,612~~ | ~~02/28/2006~~ | ~~IC 43:  Restaurant services~~ |
| JOHN'S INCREDIBLE PIZZA CO. ALL YOU CAN EAT FOOD & FUN (and design) | 3,099,682 | 06/06/2006 | IC 41:  Entertainment services, namely, providing laser tag, electric go-karts, bumper cars, arcade games, prize redemption games, and arcade rides; and providing coin-operated video games in the nature of an amusement arcade |

True and correct copies of JIPC's above federal registrations are attached hereto as Exhibits 1-4.

8.    JIPC also owns the following and other service marks registered with the California Secretary of State:

| Mark | Reg. No. | Reg. Date | Services |
|---|---|---|---|
| JOHN'S INCREDIBLE PIZZA CO. | 058668 | 01/21/2004 | International Class ("IC") 42: Restaurant services |
| JOHN'S INCREDIBLE PIZZA CO. | 059016 | 04/12/2004 | IC 41:  Entertainment services |
| JOHN'S INCREDIBLE PIZZA CO. ALL YOU CAN EAT FOOD & FUN (and design) | 059018 | 04/12/2004 | IC 42:  Restaurant services |
| JOHN'S INCREDIBLE PIZZA CO. ALL YOU CAN EAT FOOD & FUN (and design) | 059015 | 04/12/2004 | IC 41:  Entertainment services |

True and correct copies of JIPC's above California registrations are attached hereto as Exhibits 5-8.

9.    JIPC's registrations noted in Paragraphs 7 and 8 above are valid and subsisting and constitute prima facie evidence of JIPC's ownership of the JOHN'S INCREDIBLE PIZZA CO. and JOHN'S INCREDIBLE PIZZA CO. ALL YOU

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF          -4-

Portlnd2-4702177.2 0061355- 00004

1    CAN EAT FOOD & FUN (and design) marks and of JIPC's exclusive right to use

2    the same in connection with the services set forth in said registrations.

3        10.    JIPC has also filed Application Serial Nos. 78/435,085 and 78/435,080

4    seeking registration for the service mark INCREDIBLE PIZZA CO. in IC 43 and

5    41, respectively.

6        11.    JIPC also owns common-law rights in the marks identified in

7    Paragraphs 7, 8 and 10 above, as well as trade name rights in JOHN'S

8    INCREDIBLE PIZZA CO., based on the continuous use by JIPC and its

9    predecessors.

10        12.    The JOHN'S INCREDIBLE PIZZA CO. mark and name and the

11    INCREDIBLE PIZZA CO. mark were first used in commerce for restaurant

12    services and entertainment services at least as early as September 1997 by JIPC's

13    predecessor and have been continuously used in commerce since 1997 by JIPC and

14    its predecessor and licensees.

15        13.    The JOHN'S INCREDIBLE PIZZA CO. ALL YOU CAN EAT

16    FOOD & FUN (and design) mark was first used in commerce for restaurant

17    services and entertainment services at least as early as March 2002 by JIPC and has

18    been continuously used in commerce by JIPC and its licensees since then.

19        14.    The adoption of the JOHN'S INCREDIBLE PIZZA CO.,

20    INCREDIBLE PIZZA CO., and JOHN'S INCREDIBLE PIZZA CO. ALL YOU

21    CAN EAT FOOD & FUN (and design) marks and the JOHN'S INCREDIBLE

22    PIZZA CO. name (collectively, the "INCREDIBLE Marks") by JIPC and its

23    predecessor was in good faith and was the first use of these marks and name in

24    association with restaurant and entertainment services.

25        15.    The INCREDIBLE Marks have never been merely descriptive of the

26    services provided by JIPC in association with the marks.  As such, no secondary

27    meaning is required for the INCREDIBLE Marks to be valid and enforceable

28    against later users of infringing marks.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF                    -5-

Portlnd2-4702177 2 0061355- 00004

16.     JIPC has spent tens of thousands of dollars annually in the promotion and advertisement of its business, products and services identified and distinguished by the INCREDIBLE Marks.  By reason of such substantial promotion and advertising and the high quality of its business, products and services bearing the INCREDIBLE Marks, JIPC has attained and now enjoys a valuable good will and an enviable reputation in the marketplace with respect to its marks and its business, products, and services. The relevant public has come to know, rely on, and associate the INCREDIBLE Marks with a single source, namely JIPC, and to recognize JIPC's business and services by its marks and name.

17.     JIPC has at all times since adoption exercised exclusive control of the INCREDIBLE Marks as used in association with restaurant and entertainment services.

**B.     The Success and Expansion of JOHN'S INCREDIBLE PIZZA CO.**

18.     John Parlet is the founder, president, and chief executive officer ("CEO") of JIPC.  Parlet has owned and operated restaurants, including pizza restaurants, since the early 1970s.  Parlet also founded a software company to develop and market a proprietary pizza order entry and management system—known as RapidFire—for use in the pizza industry.

19.     Drawing on all that he had learned about the pizza and entertainment business in his more than 20 years in the pizza industry and on his travels across the country selling the RapidFire system to pizza restaurants, Parlet began developing the JOHN'S INCREDIBLE PIZZA CO. concept in or about 1995.  When it came time to select a name for his new restaurants, Parlet coined the term JOHN'S INCREDIBLE PIZZA CO.  Parlet chose JOHN'S INCREDIBLE PIZZA CO. because the term conveyed a sense of mystery and excitement that Parlet believed would attract the interest of potential customers.

20.     On June 3, 1997, Parlet incorporated John's Incredible Pizza Co., Inc. ("JIPC, Inc.") in California.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF                          -6-

Portlnd2-4702177 2 0061355- 00004

1    21.    On or about September 12, 1997, JIPC, Inc. opened the first JOHN'S

2    INCREDIBLE PIZZA CO. store in Victorville, California.

3    22.    At the time it opened, the Victorville JOHN'S INCREDIBLE PIZZA

4    CO. store featured (as it does today) an all-you-can-eat buffet, including pizza,

5    pasta, salad, and dessert; seating capacity for 300 in three themed dining rooms—a

6    cartoon-themed room, a sports-themed room, and a "quiet" room with a fireplace

7    for those who want to enjoy a peaceful meal in a relaxed setting; and an

8    entertainment center featuring a large game room with video games, redemption

9    games and prizes, bumper cars, and eight private rooms for hosting birthday parties

10   and other group events.

11   23.    The Victorville JOHN'S INCREDIBLE PIZZA CO. store was and

12   immediate success and within two or three weeks of opening, customers were lined

13   up out the door each weekend night waiting to get in.

14   24.    The launch of the Victorville store was followed by the opening of

15   seven additional JOHN'S INCREDIBLE PIZZA CO. stores in California:

16   Bakersfield (November 1998), Fresno (June 2000), Stockton (August 2002),

17   Modesto (July 2003), Montclair (January 2005), Roseville (March 2007) and

18   Riverside (November 2007).  A ninth JOHN'S INCREDIBLE PIZZA CO. store is

19   scheduled to open in Buena Park, California in early 2009.

20   25.    Each JOHN'S INCREDIBLE PIZZA CO. store has continuously

21   offered, under the INCREDIBLE Marks, all-you-can-eat buffets of pizza, pasta,

22   salad, and dessert, in an entertainment complex featuring theme rooms, video

23   games, redemption games, and other kinds of activities such as miniature golf,

24   bumper cars, and go-karts.

25   26.    On or about March 31, 1999, JIPC, Inc. assigned its rights in the

26   JOHN'S INCREDIBLE PIZZA CO. and INCREDIBLE PIZZA CO. names and

27   marks to JIPC, together with all associated good will.  Since at least March 31,

28   1999, JIPC has managed and licensed the operation of each JOHN'S INCREDIBLE

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR          -7-
DAMAGES AND INJUNCTIVE RELIEF

Portlnd2-4702177.2 0061355- 00004

1   PIZZA CO. store under the JOHN'S INCREDIBLE PIZZA CO. and INCREDIBLE

2   PIZZA CO. names and marks.

3   **C.     Rick Barsness's Background as a Mr. Gatti's Franchisee.**

4          27.     On information and belief, Richard ("Rick") Barsness is founder,

5   CEO, and, together with his wife, Cheryl, owner of defendant IPC. On information

6   and belief, Rick and Cheryl Barsness are also managers of and own a controlling

7   interest in defendant IPFG, which describes itself as an affiliate of IPC.

8          28.     Starting in the 1970s, Barsness (or companies controlled by him)

9   owned and operated franchised pizza restaurants in Texas under the mark

10   MR. GATTI'S. By the early to mid-1990s, some of the Mr. Gatti's restaurants

11   featured all-you-can-eat buffets of pizza, pasta, salad, and dessert in an

12   entertainment complex featuring theme rooms, video games, redemption games,

13   and other kinds of activities.

14   **D.     Barsness Learns of Parlet's Plans to Use the JOHN'S INCREDIBLE
           PIZZA CO. Name.**

15

16          29.     Barsness and Parlet first became acquainted in the mid-1990s, when

17   Barsness bought Parlet's RapidFire order management system for use in Barsness's

18   Mr. Gatti's restaurants. Barsness and Parlet struck up a professional friendship in

19   which they discussed, from time to time, the pizza restaurant industry and

20   exchanged ideas and concepts for their respective businesses.

21          30.     In or about 1995 or 1996, Parlet disclosed to Barsness that Parlet

22   planned to open a chain of all-you-can-eat buffets of pizza, pasta, salad, and dessert

23   in an entertainment complex under the name JOHN'S INCREDIBLE PIZZA CO.

24   From time to time thereafter, Parlet would discuss ideas he had for the JOHN'S

25   INCREDIBLE PIZZA CO. concept with Barsness. However, at no time did Parlet

26   discuss Barsness's use of the INCREDIBLE PIZZA CO. name with Barsness or

27   agree that Barsness could use the INCREDIBLE PIZZA CO. name or any variant

28   thereon.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF                    -8-

Portlnd2-4702177.2 0061355- 00004

**E.**     **Barsness Visits the Victorville JOHN'S INCREDIBLE PIZZA CO.**

31.     Barsness knew about the Victorville JOHN'S INCREDIBLE PIZZA CO. when it opened in September 1997.  Only a few months before the Victorville store opened, one of Barsness's longtime managers, Ron Jones, quit to go work for Parlet in Victorville.  Although Jones informed Barsness that he had approached Parlet about the position on his own initiative, Barsness remained upset and offended that Parlet had hired Jones.  As Barsness told L.D. Brinkman, the president of Mr. Gatti's restaurants at the time, Barsness was "pissed off" about Parlet's hiring Jones.  Based on Jones's hiring, Barsness believed he and Parlet were no longer friends and, from that point on, Barsness claimed he no longer trusted Parlet.

32.     Despite his anger at Parlet, Barsness went to the Victorville JOHN'S INCREDIBLE PIZZA CO., purportedly out of "curiosity," in or about late 1997.  While he was there, Barsness saw that the Victorville store had a buffet featuring pizza, pasta, salad, and dessert, as well as a game room featuring video games and redemption games, and saw the JOHN'S INCREDIBLE PIZZA CO. name displayed on the store.  Barsness continued to keep track of Parlet's plans for the chain through the industry "grapevine" and knew that Parlet was expanding.

33.     In late 1997 or the first half of 1998, Barsness sent Larry Abbe, the manager of Mr. Gatti's franchises in Abilene, Texas, to Victorville for a week to pick up and receive training on certain sauces and pizza crust recipes that Parlet had agreed to sell to Barsness.  Parlet had agreed to sell the recipes to Barsness based on Barsness's representation that he planned to sell his Mr. Gatti's franchises and open his own restaurants and wanted recipes from another source so Mr. Gatti's could not accuse Barsness of stealing its proprietary recipes.  Barsness never advised Parlet that Barsness was planning to use the INCREDIBLE PIZZA CO. name in connection with Barsness's new restaurant.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF
Portlnd2-4702177.2 0061355- 00004

-9-

**F.     Barsness's Bad-Faith Appropriation of the INCREDIBLE PIZZA CO. Name.**

34.     Starting in 1996, Rick and Cheryl Barsness began talking about terminating the franchise relationship with Mr. Gatti's and opening their own pizza restaurant in a state where there were no Mr. Gatti's with which to compete.

35.     On or about April 6, 1998, Barsness informed Mr. Gatti's that he wished to sell all of his Mr. Gatti's restaurants, leave the Southwest, and move to Springfield, Missouri to open his own pizza restaurants.  In discussing the process of disposing of his franchises and his future plans with Mr. Gatti's, Barsness acknowledged that he had "seen the John's Incredible restaurant in Victorville" and was aware of Mr. Gatti's concerns that the Victorville restaurant might violate Mr. Gatti's trade dress (a charge Mr. Gatti's never raised with, or asserted against, JIPC).

36.     By mid-1998, Barsness had begun selling his Mr. Gatti's franchises and had purchased a place to live in Rogersville, Missouri.

37.     By no later than October 1998, Barsness had decided to name his new restaurant INCREDIBLE PIZZA CO. and began working with a designer to develop a logo for the proposed restaurant.  At the time, Barsness was aware that Parlet was using the JOHN'S INCREDIBLE PIZZA CO. name, as well as of the possibility that Parlet was going to expand outside of California.  Although Barsness could have chosen from an unlimited number of other names, Barsness never considered any name other than INCREDIBLE PIZZA CO.

38.     In or about September 1999, Barsness told Madison Scott, a local Texas businessman who was considering the purchase of Barsness's Amarillo, Texas Mr. Gatti's franchises, that "[t]here's something out of California that's called John's Incredible Pizza Company, and he [Barsness] was thinking himself of doing an Incredible Pizza Company."  Barsness also told Scott that JIPC was "doing extremely well up there [and] that it had grown by four or - - you know,

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF          -10-

Portlnd2-4702177 2 0061355- 00004

1   they'd gone to four stores or something by now." Barsness also told Scott that he

2   had obtained a "delicious pizza recipe" from JOHN'S INCREDIBLE PIZZA CO.

3   that could be used in connection with his INCREDIBLE PIZZA CO. restaurant.

4       39.   On or about September 21, 1999, Barsness filed with the USPTO

5   Application Serial No. 75/805,643 (the "'643 Application") to register

6   INCREDIBLE PIZZA CO. (and design) on an intent to use basis in IC 42 for

7   restaurant services.

8       40.   The '643 Application was supported by a declaration executed by

9   Barsness on September 20, 1999. In his declaration, Barsness (after acknowledging

10  that he had been warned that willful false statements were punishable by fine,

11  imprisonment, etc.) stated that he believed himself to be entitled to use the

12  INCREDIBLE PIZZA CO. (and design) mark in commerce and that to the best of

13  his knowledge and belief "no other person, firm, corporation, or association has the

14  right to use said mark in commerce, either in the identical form or in such near

15  resemblance thereto as may be likely, when applied to the goods of such other

16  person, to cause confusion, or to cause mistake, or to deceive."

17      41.   At the time Barsness executed his declaration, he understood that

18  Parlet and his company were using, and had the right to use, the name JOHN'S

19  INCREDIBLE PIZZA CO. in connection with restaurant services. Indeed,

20  approximately three weeks later, Barsness represented in a letter to Scott dated

21  October 14, 1999 that with regard to the INCREDIBLE PIZZA CO. name,

22  "someone else is operating under that name and concept in California." Barsness

23  has subsequently admitted under oath that the "someone else" indicated in the letter

24  was a reference to Parlet and the JOHN'S INCREDIBLE PIZZA CO. restaurants.

25  **G.    Parlet Hears About and Objects to Barsness's Plans to Use the
26        INCREDIBLE PIZZA CO. Name.**

27      42.   In or about October 1999, Parlet heard a rumor that Barsness was

28  planning on opening a restaurant in Texas using the INCREDIBLE PIZZA CO.

STOEL RIVES LLP
ATTORNEY AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF    -11-

Portlnd2-4702177.2 0061355- 00004

1   name. Parlet immediately called Barsness and objected to Barsness's proposed use
2   of the name on the grounds that it would be confusingly similar to JIPC's JOHN'S
3   INCREDIBLE PIZZA CO. name. Parlet also demanded that Barsness choose a
4   different name for any restaurant concept he might pursue. At no time did Barsness
5   reveal to Parlet that Barsness had filed an application to register the INCREDIBLE
6   PIZZA CO. (and design) mark with the USPTO.

7   **H.   Barsness's Bad-Faith Incorporation of IPC.**

8        43.   On December 23, 1999, Barsness incorporated IPC under the name
9   "Incredible Pizza Co., Inc.," with full knowledge of JIPC's prior use of the JOHN'S
10  INCREDIBLE PIZZA CO. mark and its objection to Barsness's use.

11  **I.   Barsness Asks Parlet's Permission to Use the INCREDIBLE PIZZA CO.**
12  **Name in "Some Part of the Country" and Parlet Refuses**

13       44.   On or about May 3, 2000, Barsness called Parlet and secretly recorded
14  their conversation without informing Parlet. The tape was subsequently
15  transcribed. Toward the end of the conversation, Barsness's brought up the
16  objections Parlet previously raised to Barsness's use of the INCREDIBLE PIZZA
17  CO. name:

18            MR. BARSNESS:  * * * The other thing was, John,
19        do you and I need to talk anymore about the name issue?
20            MR. PARLET:  Not as long as—you know where
21        I'm coming from on that, Rick. I asked you not to use the
22        name and I'll continue asking you not to use the name.
23        There's a million names out there, you can pick anything.
24        But John's Incredible Pizza Company is a name that I use
25        and I don't know—who knows whether I'm going to go
26        nationwide or where I'm going.
27            MR. BARSNESS:  I understand that, you know,
28        position. I hope that you understand, you know, the

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF                    -12-

Portlnd2-4702177 2 0061355- 00004

1    thoughts that I had when we went into investing the
2    money to create the logo and everything we did. I
3    thought that you and I had an understanding. Obviously
4    you didn't you know, think the same way.
5        MR. PARLET: Right.
6        MR. BARSNESS: And I wish to God I would have
7    called you before we invested all the money and stuff and
8    energy into that issue. But I mean it's done, it's past, it's
9    spent and I would still like to come to terms with you
10   somehow on that issue if we could break apart some part
11   of land or some part of the country and say, you know,
12   "Okay, Rick, it's all right for you to use the name in this
13   part of the country and I'll use it over in this part of the
14   country." That's the deal I thought we had in the first
15   place. And obviously you didn't think so.
16       MR. PARLET: Right.
17       MR. BARSNESS: But if we could come to
18   terms—quite frankly, I miss your friendship.
19       MR. PARLET: Well, I miss talking to you too
20   Rick. You obviously have no intention of changing and I
21   know I ain't changing. * * * I asked you before about
22   the Amarillo switch over to consider any other name but
23   that. You said you didn't want to so we are very much—
24   there's no room for discussion on it, Rick.
25       MR. BARSNESS: I think it was too late at that
26   time with everything—the ball was already rolling and it
27   would have taken --
28       MR. PARLET:   Well, pick a new name out and go

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR            -13-
DAMAGES AND INJUNCTIVE RELIEF

Portlnd2-4702177 2 0061355- 00004

1    forward.

2        MR. BARSNESS: Well, we can discuss that, you

3    know, John. There—is there just no room at all for me to

4    have some part of the country and use the name where

5    you and I can get together on it, a small piece of real

6    estate anywhere?

7        MR. PARLET: No, I'm being pretty narrow

8    minded on that one, Rick.

9    * * * *

10        MR. BARSNESS: * * * I wouldn't want to take

11    anything from anybody. I never have in my life, ever. I

12    like to consider myself independent. And I don't want to

13    get back on – the whole reason I came out from Gatti's is

14    so I could be independent. That's the way I want to be.

15        MR. PARLET: I wish you well in it. Just pick

16    another name, I'll wish you more well, it's just that

17    simple.

18        MR. BARSNESS: Well, I think we are headed in

19    that direction. I don't want you to think that I'm not

20    absolutely not headed in that direction.  If I thought that

21    you and I could get our relationship back by doing that,

22    then I think that it certainly could be considered if there

23    would be a little bit of movement on each person's part.

24    If you could consider a little bit of movement then we

25    certainly, I think, can discuss this some more at your

26    convenience.

27        MR. PARLET: There ain't nothing to move on my

28    end, Rick, it's very simple.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF          -14-

Portlnd2-4702177.2 0061355- 00004

1      MR. BARSNESS: Okay. And I'll tell you, John,

2    that we are considering that. Okay.

3    45. Despite his repeated assurances to Parlet, however, Barsness took no

4 further action to select a different name. To the contrary, Barsness moved forward

5 with plans to open his own all-you-can-eat pizza, pasta, salad, and dessert buffet

6 restaurant and family entertainment center under the INCREDIBLE PIZZA CO.

7 name in Springfield, Missouri.

8 **J. Barsness Falsely Represents His Use of the INCREDIBLE PIZZA CO.**

9   **(and Design) Mark to the USPTO.**

10   46. On March 23, 2001, in response to the USPTO's notice of allowance

11 of the '643 Application, Barsness filed a Statement of Use under 37 C.F.R. § 2.88

12 ("Statement of Use"), which stated that "[a]pplicant is using the mark in commerce

13 on or in connection with the goods/services identified in the Notice of Allowance"

14 and which provided November 2000 as the date of first use and date of first use in

15 commerce. The Statement of Use was supported by a declaration executed by

16 Barsness on February 22, 2001, in which Barsness affirmed that the "mark is now

17 in use in commerce," and that all statements made in the Statement of Use were

18 true (or if made on information or belief, believed to be true).

19   47. Barsness's representation that he was using the INCREDIBLE PIZZA

20 CO. (and design) mark in commerce was, on information and belief, knowingly

21 false at the time it was made.

22   48. On October 23, 2001, the USPTO issued to Barsness federal

23 Registration No. 2,500,872 for the mark INCREDIBLE PIZZA COMPANY

24 GREAT FOOD, FUN, FAMILY & FRIENDS (and design) in IC 42 for restaurant

25 services. On information and belief, Barsness subsequently assigned ownership of

26 Registration No. 2,500,872 to IPC.

27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF  -15-

Portlnd2-4702177.2 0061355- 00004

**K.     Barsness's Bad-Faith Registration of the Incrediblepizza.com Domain.**

49.     On information and belief, on or about December 3, 2001, Barsness, acting on behalf of IPC, registered or purchased the Internet domain name incrediblepizza.com and caused it to be registered in the name of IPC with the prior knowledge of, and bad-faith intent to profit from, JIPC's INCREDIBLE Marks.

50.     On information and belief, on or about July 21, 2002, IPC posted an Internet Web page at the Uniform Resource Locator ("URL") www.incrediblepizza.com that read "Welcome to Springfield's Incredible Pizza Co." and offered "behind the scenes peek at the restaurant construction currently under way, our contact information, and the Incredible Pizza Co. Mission Statement."

**L.     IPC Opens Its First INCREDIBLE PIZZA CO. Restaurant.**

51.     In or about August 2002, IPC opened its first restaurant under the name SPRINGFIELD'S INCREDIBLE PIZZA COMPANY in Springfield, Missouri. The SPRINGFIELD'S INCREDIBLE PIZZA COMPANY restaurant offered an all-you-can-eat buffet of pizza, pasta, salad, and dessert, themed dining areas, private party rooms, and a large game and entertainment area with redemption games, video games, and rides.

**M.     IPC Begins Offering INCREDIBLE PIZZA CO. Franchises.**

52.     On information and belief, in or about September 2003, Barsness formed IPFG and caused IPC to enter into a license agreement purportedly authorizing IPFG to use and sublicense the INCREDIBLE PIZZA CO. mark.

53.     On information and belief, in fall 2003, IPFG began offering to franchise, in certain limited territorial areas, restaurant and entertainment centers with an all-you-can-eat buffet, themed dining, private party rooms, and an entertainment area containing games, rides and attractions, operating under the name INCREDIBLE PIZZA COMPANY.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF          -16-

Portlnd2-4702177.2 0061355- 00004

54.     IPC and IPFG offered INCREDIBLE PIZZA COMPANY franchises with full knowledge and in willful defiance of JIPC's senior rights and objections. On information and belief, since at least April 2004, the Uniform Franchise Offering Circular ("UFOC") for the franchises offered by IPC and IPFG has stated:

> We are aware of a company in California, John's
> Incredible Pizza Co., which claims to have operated under
> the name "John's Incredible Pizza Co." prior to our use of
> our Mark and this company claims to be able to prevent
> us from operating or franchising [family entertainment
> centers]. John's Incredible Pizza Co. transferred its
> trademark rights to JIPC Management, Inc. ("JIPC").
> * * * * JIPC claims to own the service marks "Incredible
> Pizza Co.," "John's Incredible Pizza Co." and "John's
> Incredible Pizza Co. Al You Can Eat Food & Fun!". It
> claims use of its mark since September 1997 and says it
> now has five restaurants, which we believe are only in
> certain parts of California.

**N.    IPC Refuses JIPC's Demand that It Cease Use of the INCREDIBLE PIZZA CO. Name.**

55.     On or about March 16, 2004, attorneys for JIPC sent Barsness and IPC letters demanding that they immediately cease and desist use of the INCREDIBLE PIZZA COMPANY, INCREDIBLE PIZZA CO., INC., and SPRINGFIELD'S INCREDIBLE PIZZA COMPANY names.

56.     On or about March 31, 2004, IPC, acting through its attorneys, responded to JIPC's cease and desist letter. In the letter, IPC acknowledged that multiple JIPC's JOHN'S INCREDIBLE PIZZA CO. restaurants had been operating in southern California since before September 1999. Notwithstanding this acknowledgement of JIPC's prior use, IPC refused to cease its own bad-faith use.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF     -17-

PortInd2-4702177 2 0061355- 00004

57.   In its letter, IPC also represented that it "currently conducts no business in the State of California [and] * * * has no current plans to conduct any business in California either directly or as result of its [contractual relationship with its franchisee]."

O.   **JIPC and IPC Engage in Litigation Before the TTAB.**

58.   On May 21, 2004, JIPC commenced an action before the Trademark Trail and Appeal Board ("TTAB") of the USPTO, captioned *JIPC Management, Inc. v. Incredible Pizza Co, Inc.*, Cancellation No. 92043316, seeking cancellation of IPC's Registration No. 2,500,872 for the INCREDIBLE PIZZA COMPANY (and design)[1] (the "Cancellation Action"), based on fraudulent misrepresentations made by Barsness and IPC in connection with the application to register the mark and the likelihood of confusion with JIPC's senior JOHN'S INCREDIBLE PIZZA CO. mark.

59.   On or about February 25, 2005, IPC filed Application Serial No. 78,575,077 to register AMERICA'S INCREDIBLE PIZZA COMPANY (and design) in connection with "restaurant franchising, namely consultation and assistance in business management, organization and promotion; franchising, namely, offering technical assistance in the establishment and/or operation of restaurants" in IC 35.  In her declaration in support of the application, Cheryl Barsness, as vice president of IPC, stated that to the best of her knowledge and belief, "no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive."  At the time she executed her declaration, Cheryl Barsness knew JIPC had been using the JOHN'S INCREDIBLE PIZZA CO. name for years and had the right to use that

---

[1] On or about October 31, 2003, IPC amended its registration to, among other things, substitute the wording COMPANY for "CO."

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF          -18-

Portlnd2-4702177.2 0061355- 00004

1  name. Indeed, the specimen submitted with the application showed the cover of a
2  UFOC used by IPC to offer franchises of its restaurants under the name
3  INCREDIBLE PIZZA COMPANY.  Cheryl Barsness had reviewed and was
4  familiar with the contents of UFOC at the time she executed her declaration.  As set
5  forth above at Paragraph 54, the UFOC disclosed IPC's knowledge of JIPC's use
6  and objections.
7      60.    On or about October 25, 2005, the USPTO approved the publication of
8  the AMERICA'S INCREDIBLE PIZZA COMPANY (and design) mark of
9  Application Serial No. 78/575,077 for opposition on December 20, 2005.  On April
10  19, 2006, JIPC commenced a second action before the TTAB, captioned *JIPC*
11  *Management, Inc. v. Incredible Pizza Co, Inc.*, Opposition No. 91170452, opposing
12  IPC's Application Serial No. 78/575,077 (the "Opposition Action"), also on the
13  grounds of fraud and likelihood of confusion with JIPC's JOHN'S INCREDIBLE
14  PIZZA CO. mark.
15      61.    Notwithstanding its prior knowledge of JIPC's objection to its use, IPC
16  not only continued to use the AMERICA'S INCREDIBLE PIZZA COMPANY
17  (and Design) mark in connection with restaurant franchising services, but
18  subsequently expanded its use of the mark to include use directly with restaurant
19  and entertainment services.
20      62.    Since May 2004, JIPC and IPC have been vigorously litigating the
21  Cancellation Action and the Opposition Action, which were consolidated for all
22  purposes on December 4, 2006.
23  **P.    IPC and IPFG Expand into California.**
24      **1.    IPC Targets California with Its NASCAR Sponsorship.**
25      63.    Before April 2008, JIPC, IPC, and IPFG used their respective marks in
26  geographically separate and distinct market areas, with no real competition between
27  them.  Indeed, on information and belief, before April 2008, neither IPC nor IPFG
28  conducted business in California or had undertaken any efforts to extend the

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF                    -19-
Portlnd2-4702177.2 0061355- 00004

1   reputation of their claimed marks into California, which falls outside their natural

2   zone of expansion.  JIPC's operations and stores were all located within California

3   and the reputation of its INCREDIBLE Marks had not extended into Missouri,

4   Texas, Okalahoma or any other state where IPC claimed operation.  As a result,

5   before April 2008, any claim by JIPC against IPC and IPFG for infringement and

6   unfair competition had yet to ripen into a cause of action.

7        64.   On or about March 31, 2008, IPC and CJM Racing, LLC ("Racing")

8   announced that they had entered into a sponsorship arrangement, pursuant to which

9   IPC agreed to sponsor Racing's team entry in the 2008 season of National

10  Association for Stock Car Auto Racing ("NASCAR") Nationwide Series[2] of race

11  events.  A copy of the press release issued by Racing is attached hereto as Exhibit

12  9.

13       65.   On information and belief, IPC entered into its sponsorship

14  arrangement with Racing with the knowledge and intent that Racing would use and

15  promote IPC's INCREDIBLE PIZZA COMPANY marks and logos nationally, and

16  specifically in California, and expressly licensed Racing to use IPC's

17  INCREDIBLE PIZZA COMPANY marks and logos for such purposes.  Indeed, the

18  announcement came mere weeks after Racing had competed in the Stater Bros. 300,

19  a NASCAR race held at the California Speedway, in Fontana, California.

20       66.   On information and belief, IPC also entered into the Racing

21  sponsorship with the knowledge that only four of the 23 separate venues hosting

22  NASCAR Nationwide Series events in 2008 were located within states where IPC-

23  owned or franchised stores currently operate and, of those four, three were located

24  within the single state of Tennessee.

25       67.   On information and belief, not only did IPC agree to sponsor Racing

26  with the knowledge and intent that Racing display IPC's marks and logos at events

27  _____

28       [2] Prior to 2008, the Nationwide Series was known as the "Busch Series."

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF                    -20-

Portlnd2-4702177.2 0061355- 00004

1  held in California, Illinois, Wisconsin, New York, New Hampshire, Minnesota,

2  Delaware, Virginia, North Carolina, Florida, Georgia, Alabama, Indiana, Kentucky,

3  Alabama, Arizona, and Nevada, where there were no operating IPC stores, IPC also

4  knew and intended that the NASCAR events Racing competed in outside of

5  California were, and would continue to be, broadcast nationally, including

6  specifically in California, on the ABC, ESPN and ESPN2 television networks.

7      68.    On information and belief, starting on or about April 5, 2008, IPC

8  added an IPC Racing page to its Web site at www.incrediblepizza.com. The IPC

9  Racing page features photographs of Racing's "No. 11 America's Incredible Pizza

10  Company Racing Chevrolet" and team uniforms prominently displaying IPC's

11  INCREDIBLE PIZZA COMPANY marks and logos. The HTML source code for

12  the IPC Racing page also includes a metatag that includes the keyword phrase

13  "Incredible Pizza Company."

14      69.    The IPC Racing page posted on IPC's Web site includes a Racing

15  2008 Racing Schedule listing each of the events that Racing's "No. 11 America's

16  Incredible Pizza Company Racing Chevrolet" and team has participated in or is

17  scheduled to appear. A printout of the IPC Racing page is attached hereto as

18  Exhibit 10.

19      70.    Among the events included on the a Racing 2008 Racing Schedule

20  posted on the IPC Racing page of the IPC Web site is Camping World 300, which

21  was held within this District at the California Speedway in Fontana, California on

22  August 30, 2008.

23      71.    The California Speedway is located almost directly in the middle of

24  three separate JOHN'S INCREDIBLE PIZZA CO. stores: 13.8 miles east of the

25  Montclair store, 19.6 miles northeast of the Riverside store, and 34.2 miles south of

26  the Victorville store. A map illustrating the location of the California Speedway

27  track in relation to these stores is attached hereto as Exhibit 11.

28

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF
Portlnd2-4702177.2 0061355- 00004

-21-

72.     On information and belief, there are currently 63 local chapters of the Official NASCAR Members Club, NASCAR's sanctioned fan organization, located in California, including local chapters in cities where there are JOHN'S INCREDIBLE PIZZA CO. stores such as Victorville, Bakersfield, and Fresno.

73.     On information and belief, starting on or about April 5, 2008, Racing began referring to its "No. 11" entry in the NASCAR Nationwide Series in its publications, press releases, and marketing collateral and on its Web site at www.cjmracing.com as the "No. 11 America's Incredible Pizza Company Racing Chevrolet."  On information and belief, Racing also began prominently displaying IPC's infringing INCREDIBLE PIZZA COMPANY marks and logos on Racing's race cars, team uniforms, and Web site and in Racing's publications, newsletters, and marketing collateral.  Photographs printed out from Racing's Web site depicting IPC's INCREDIBLE PIZZA COMPANY marks and logos prominently displayed on Racing's "No. 11 America's Incredible Pizza Company Racing Chevrolet" and team uniforms are attached hereto as Exhibit 12.

74.     On information and belief, starting on or about April 5, 2008, Racing revised the HTML source code for the home page of its Web site at www.cjmracing.com to include as a keyword metatag the phrase "Incredible Pizza Company."

75.     On information and belief, since April 5, 2008, the "No. 11 America's Incredible Pizza Company Racing Chevrolet" has started in one or more National Series events broadcast nationally, including in California, on the ABC, ESPN and/or ESPN2 networks.

76.     On information and belief, there are at least 50 million NASCAR Nationwide Series fans in the United States and approximately 38% of NASCAR Nationwide Series fans have children under 18.  On information and belief, in 2006 more than 60,000 fans, on average, attended each Nationwide Series event.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF

-22-

Portlnd2-4702177 2 0061355- 00004

1      77.    On information and belief, the number of households tuning in to

2    NASCAR Nationwide Series events broadcast on television in 2007 was projected

3    to be, on average, 95.1 million per event.  On information and belief, the NASCAR

4    Nationwide Series was the third highest rated regular season sport on cable

5    television in 2006, garnering higher ratings than Major League Baseball, NBA and

6    NCAA basketball, PGA Golf, and NHL Hockey.  Moreover, the Los Angeles,

7    California television market is, on information and belief, among the top 10 largest

8    NASCAR Nationwide Series markets in the United States based on the average

9    number of households tuning in per event.

10      78.    On information and belief, NASCAR.COM, the official NASCAR

11   Internet website, boasts nearly four million unique users per month, over 100

12   million page views per month, and over 1.2 billion page views per year.

13      **2.    IPC and IPFG Begin Offering Franchises in California.**

14      79.    In or about May 2008, IPC altered its Web site to add a section titled

15   Available Markets to the page that discusses IPC franchise opportunities.  The new

16   Available Markets section includes a map of the United States and prompts the user

17   to "click desired state to view available cities." (Exhibit 13.)  Clicking on

18   California brings up a listing of 27 cities in California in which IPC franchises are

19   available.  The list includes several cities, such as Bakersfield, Fresno, Modesto,

20   Stockton, and Riverside, where existing JOHN'S INCREDIBLE PIZZA CO. stores

21   are located. (Exhibit 14.)  By selecting the "Print" button, a list of all 27 California

22   cities can be printed on a single sheet with the AMERICA'S INCREDIBLE PIZZA

23   COMPANY (and design) logo displayed at the top. (Exhibit 15.)

24      80.    The Available Markets section also provides a link to download "a

25   printer-friendly list of available markets."  Selecting the link downloads a list of

26   available cities organized by state.  The California section lists the same 27 cities.

27   (Exhibit 16.)

28

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF

-23-

Portlnd2-4702177.2 0061355- 00004

81.    On information and belief, IPC's Web site can be accessed nationally and specifically from within California.

82.    On information and belief, IPC and IPFG are aware that IPC's Web site can be accessed from within California and, starting in April 2008, it has been IPC and IPFG's specific intent and purpose to target and solicit potential consumers of their services in California and to expand the reputation of IPC's INCREDIBLE PIZZA COMPANY marks and logos into California.  Consistent with that intent, on July 8, 2008, IPFG filed a Notice of Exemption for Internet Advertisement, dated June 20, 2008, with the California Department of Corporations certifying that the URL address *www.incrediblepizza.com* "contains information concerning the offer and sale of the Company's franchises" and that IPFG agrees to comply with the California Franchise Investment Law, and the Rules thereunder, "when posting any communication in connection with the offer and sale of a franchise on a web site."Likelihood of Confusion.

83.    IPC and IPFGbegan using the names INCREDIBLE PIZZA CO., INCREDIBLE PIZZA COMPANY (with and without Design), AMERICA'S INCREDIBLE PIZZA COMPANY (with and without Design), and INCREDIBLE PIZZA.COM  (the "IPC Marks") in association with restaurant, entertainment, and franchise services long after JIPC and its predecessor's first use in commerce of the INCREDIBLE Marks in association with the sale and promotion of restaurant and entertainment business and services.

84.    The IPC Marks are confusingly similar to the INCREDIBLE Marks.

85.    The goods and services offered by IPC, IPFG, and Racing are the same as, or substantially related to, the services in connection with which JIPC's INCREDIBLE Marks have been used.

86.    JIPC's target audience (families with children 16 or younger) is the same as IPC's target audience and is a subset of Racing's target audience (stock car racing fans).

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF
Portlnd2-4702177.2 0061355- 00004

-24-

87.    IPC, IPFG, and Racing's use of the IPC Marks, when used in conjunction with restaurant, entertainment, and franchising services, is likely to cause confusion among customers as to the source of the services or may cause customers to believe that defendants' services sold or promoted in association with the IPC Marks are endorsed by, sponsored by, affiliated with, or in some way connected to JIPC.

**Q.    The Harm to JIPC.**

88.    Defendants are acting without a license or the consent of JIPC and have caused, and unless restrained by this Court, will continue to cause, serious and irreparable injury to JIPC and to the good will associated with the INCREDIBLE Marks.

89.    Due to defendants' conduct alleged herein, since at least April 2008, the infringing IPC Marks have been viewed repeatedly by millions of consumers nationwide, including in California, and have caused, and continue to cause, a likelihood of confusion and injury to JIPC's right to the exclusive use of the INCREDIBLE Marks, as well as to JIPC's valuable goodwill.

90.    As a result of defendants' infringing and wrongful conduct alleged herein, JIPC must undertake corrective advertising to counteract the injury caused by defendants' actions.

91.    JIPC's remedies at law are not adequate to compensate for the injury caused by defendants' actions because JIPC is entitled to be in exclusive control of the INCREDIBLE Marks as used in association with restaurant, entertainment, and franchising services to prevent the likelihood that customers may be confused, mistaken, or deceived into believing that the restaurant, entertainment, and franchising services advertised and sold by defendants originate with JIPC or are endorsed by, sponsored by, affiliated with, or in some way connected to JIPC.

92.    So long as defendants are allowed to continue the acts complained of, JIPC's reputation is at defendants' mercy.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF          -25-

Portlnd2-4702177.2 0061355- 00004

1   **R.    The Willful and Wanton Nature of Defendants' Conduct.**

2        93.    On information and belief, Barsness and/or IPC had actual notice of

3   JIPC's business and JIPC's use of the INCREDIBLE Marks, and the rights claimed

4   by JIPC in said marks before the dates on which Barsness and/or IPC filed their

5   applications with the USPTO to register the INCREDIBLE PIZZA CO. (and

6   design) and AMERICA'S INCREDIBLE PIZZA COMPANY (and design) marks.

7        94.    On information and belief, Barsness, IPC, and IPFG had actual notice

8   of JIPC's business and JIPC's use of the INCREDIBLE Marks, and the rights

9   claimed by JIPC in said marks before the dates on which Barsness and/or IPC

10  began using the names INCREDIBLE PIZZA CO., AMERICA'S INCREDIBLE

11  PIZZA COMPANY, and INCREDIBLE PIZZA.COM.

12       95.    Despite actual notice to defendants, defendants continue to promote

13  and sell services in association with the INCREDIBLE PIZZA CO., AMERICA'S

14  INCREDIBLE PIZZA COMPANY, and INCREDIBLE PIZZA.COM marks, in

15  violation of JIPC's exclusive rights to the INCREDIBLE Marks.

16       96.    On information and belief, defendants actions and conduct in entering

17  into, and in furtherance, of the Racing sponsorship were undertaken in bad faith and

18  with the intention or purpose to forestall and/or limit JIPC's extension of its

19  INCREDIBLE Marks beyond JIPC's current geographic territory and/or to damage

20  or weaken the value and strength of the INCREDIBLE Marks and/or JIPC's federal

21  and state registrations for the same.

22       97.    Accordingly, defendants' conduct alleged herein has been, on

23  information and belief, willful, wanton, intentional, and designed to cause

24  confusion, deception, or mistake.

25  //

26  //

27  //

28  //

Stoel Rives LLP
Attorneys At Law
Portland

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF                    -26-

Portlnd2-4702177.2 0061355- 00004

## FIRST CAUSE OF ACTION
### FEDERAL TRADEMARK INFRINGEMENT

98.   JIPC incorporates the allegations stated in Paragraphs 1-96 above as though fully set forth herein.

99.   Defendants' actions described herein constitute infringement of JIPC'S trademark registrations identified in Paragraph 7 above, in violation of the Lanham Act, 15 U.S.C. §§ 1114-1118.

## SECOND CAUSE OF ACTION
### FEDERAL UNFAIR COMPETITION

100.   JIPC incorporates the allegations stated in Paragraphs 1-96 above as though fully set forth herein.

101.   Defendants' acts constitute unfair competition under Section 43(a)(1) of the Lanham Act (15 U.S.C. § 1125(a)(1)).

## THIRD CAUSE OF ACTION
### STATE TRADEMARK INFRINGEMENT

102.   JIPC incorporates the allegations stated in Paragraphs 1-96 above as though fully set forth herein.

103.   Defendant's actions described herein constitute infringement of JIPC'S trademark registrations identified in Paragraph 8 above, in violation of California Business and Professions Code §§ 14245 and 14250.

## FOURTH CAUSE OF ACTION
### COMMON LAW TRADEMARK INFRINGEMENT

104.   JIPC incorporates the allegations stated in Paragraphs 1-96 above as though fully set forth herein.

105.   Defendant's actions described herein constitute infringement under the common law of JIPC'S trademarks identified in Paragraph 11 above.

//

//

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF                     -27-

PortInd2-4702177.2 0061355- 00004

1  **FIFTH CAUSE OF ACTION**

2  **ATTORNEYS' FEES – EXCEPTIONAL CASE**

3     106.  JIPC incorporates the allegations stated in Paragraphs 1-96 above as

4  though fully set forth herein.

5     107.  This claim for attorneys' fees is brought pursuant to the Lanham Act,

6  15 U.S.C. § 1117(a).

7     108.  Barsness and IPC's fraudulent conduct before the USPTO renders this

8  case exceptional, entitling JIPC to its reasonable attorneys' fees as the prevailing

9  party.

10     109.  Defendants' willful and bad-faith infringement of JIPC's the

11  INCREDIBLE Marks and unfair competition render this case exception, entitling

12  JIPC to its reasonable attorneys' fees as the prevailing party.

13  **SIXTH CAUSE OF ACTION**

14  **STATE TRADE NAME INFRINGEMENT**

15     110.  JIPC incorporates the allegations stated in Paragraphs 1-96 above as

16  though fully set forth herein.

17     111.  Defendant's actions described herein constitute infringement of JIPC'S

18  trade name rights in JOHN'S INCREDIBLE PIZZA CO., in violation of California

19  Business and Professions Code §§ 14402 and 14145.

20  **PRAYER FOR RELIEF**

21  WHEREFORE, JIPC prays that this Court enter a judgment as follows:

22     A.    Declaring that JIPC owns valid and subsisting trademark rights

23  in the INCREDIBLE Marks and trade name rights in the JOHN'S

24  INCREDIBLE PIZZA CO. name;

25     B.    Declaring that JIPC has superior and exclusive rights in the

26  INCREDIBLE Marks;

27     C.    Declaring that defendants be held liable under each claim for

28  relief set forth in JIPC's causes of action;

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF

-28-

Portlnd2-4702177.2 0061355- 00004

D.     Declaring that defendants' trademark and trade name infringement and unfair competition have been willful;

E.     Declaring that this case be declared exceptional pursuant to 15 U.S.C. § 1117(a);

F.     Ordering that defendants, their agents, servants, employees, attorneys, successors, assigns, and all other persons, firms, and corporations acting in concert or in participation with defendants be preliminarily and permanently enjoined from

(1)   using in any manner the INCREDIBLE Marks or a colorable imitation thereof more than 25 miles from a currently operating IPC-owned or -franchised store;

(2)   using in any manner any other mark that is confusingly similar to the INCREDIBLE Marks more than 25 miles from a currently operating IPC-owned or -franchised store;

(3)   notwithstanding (1) and (2) above, using in any manner the INCREDIBLE Marks or a colorable imitation therefore or any other mark that is confusing similar to the INCREDIBLE Marks within the same state as or within 100 miles of any operating JOHN'S INCREDIBLE PIZZA CO. store or any location leased by JIPC or one of its affiliate or licensees for the purposes of opening a JOHN'S INCREDIBLE PIZZA CO. store;

(4)   infringing JIPC's trademark and trade name rights identified herein; and

(5)   committing unfair competition and unfair business practices as detailed herein;

G.     Ordering that defendants file with this Court and serve on JIPC in accordance with 15 U.S.C. § 1116, within 30 days after service on

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF

-29-

PortInd2-4702177.2 0061355- 00004

1    defendants of such injunction (or such extended period as this Court may

2    direct), a report in writing and under oath, setting forth in detail the manner

3    and form in which defendants have complied with this injunction;

4          H.     Ordering that in accordance with 15 U.S.C. § 1118, defendants

5    deliver up to JIPC for destruction or other disposition all goods, labels, signs,

6    prints, packages, equipment, uniforms, wrappers, advertisements, business

7    forms, letterheads, and promotional materials bearing or displaying the

8    INCREDIBLE Marks, or any other term similar to the INCREDIBLE Marks

9    so as to be likely to cause confusion, deception, or mistake, in defendants'

10    possession, custody, or control (and to recall for such purpose any such

11    products and materials in the possession, custody, or control of any other

12    person), as well as any reproduction, counterfeit, copy, or colorable imitation

13    thereof, located more than 25 miles from a currently operating IPC-owned or

14    -franchised store or within the same state as or within 100 miles of any

15    operating JOHN'S INCREDIBLE PIZZA CO. store or any location leased by

16    JIPC or one of its affiliates or licensees for the purposes of opening a

17    JOHN'S INCREDIBLE PIZZA CO. store;

18          I.     Ordering that defendants be required to account for and pay to

19    JIPC all profits wrongfully derived by defendants through their unlawful acts

20    set forth herein, together with prejudgment interest from the date of accrual

21    thereof;

22          J.     Ordering that defendants be required to pay to JIPC an amount

23    sufficient to compensate JIPC for all damages caused by defendants through

24    their unlawful acts set forth herein, including but not limited to JIPC's actual

25    and prospective costs for corrective advertising, together with prejudgment

26    interest from the date of accrual thereof;

27          K.     Ordering that because of the intentional and/or willful nature of

28    defendants' infringement, and pursuant to 15 U.S.C. § 1117, defendants be

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF    -30-

Portlnd2-4702177.2 0061355- 00004

1  required to pay JIPC three times the amount of JIPC's damages and/or IPC's

2  profits;

3      L.    Ordering that defendants be required to pay to JIPC its

4  reasonable attorneys' fees and disbursements incurred herein, pursuant to 15

5  U.S.C. § 1117, California law, and/or the equity powers of this Court;

6      M.    That defendants be required to pay JIPC punitive damages as a

7  consequence of the willful and wanton acts alleged herein; and

8      N.    Ordering that defendants be required to pay JIPC the costs of

9  this action; and

10     O.    That this Court award JIPC such other and further relief as this

11 Court may deem just and appropriate.

12                    **DEMAND FOR JURY TRIAL**

13     Pursuant to Fed. R. Civ. P. 38 and Rule 38-1 of the Local Rules of the U.S.

14 District Court for the Central District of California, JIPC hereby demands a jury

15 trial on all issues triable to a jury.

16 DATED:  October 20 , 2008.        RUTAN & TUCKER, LLC

17                                   By:  /s/ Ronald P. Oines

18                                     RONALD OINES (SBN #145016)
                                       roines@rutan.com
19
20                                   STOEL RIVES LLP

21                                     RANDOLPH C. FOSTER (OSB #784340)
                                       rcfoster@stoel.com
22                                     *(pro hac vice)*
                                       STEVEN E. KLEIN (OSB #051165)
23                                     seklein@stoel.com
                                       *(pro hac vice)*
24                                   Attorneys for Plaintiff
25                                   JIPC Management, Inc.

26

27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF          -31-

Portlnd2-4702177 2 0061355- 00004