RONALD OINES (SBN #145016)
roines@rutan.com
RUTAN & TUCKER, LLC
611 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-1931
Telephone:  (714) 641-5100
Facsimile:  (714) 546-9035

RANDOLPH C. FOSTER (OSB #784340)
rcfoster@stoel.com
(to apply *pro hac vice*)
STEVEN E. KLEIN (OSB#051165)
seklein@stoel.com
(to apply *pro hac vice*)
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR  97204
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

Attorneys for Plaintiff
JIPC Management, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIPC MANAGEMENT, INC., | Case No. CV08-4310 MMM(PLAx) |
| Plaintiff, | **DECLARATION OF JOHN PARLET** |
| v. | **DATE:    June 8, 2009** |
| INCREDIBLE PIZZA CO., INC.; INCREDIBLE PIZZA FRANCHISE GROUP, LLC; CJM RACING,  LLC.; | **TIME:    10:00 a.m.**<br>**CTRM:    780** |
| Defendants. | |

1    I, JOHN PARLET,  certify and declare as follows:

2        1.    I am over eighteen years of age and am otherwise competent to testify

3    herein.

4    **A.    The Business of JIPC Management, Inc.**

5        2.    I am the founder, president, and chief executive officer ("CEO") of

6    plaintiff JIPC Management, Inc. ("JIPC").  I am also the CEO and sole shareholder

7    of JIPC Management Holdings, Inc., which owns all the shares of JIPC.

8        3.    JIPC's business is the licensing and management of restaurants

9    offering all-you-can-eat buffets of pizza, pasta, salad and desserts, in an

10   entertainment complex featuring theme rooms, video games, redemption games,

11   miniature golf, bumper cars, and go-karts under the JOHN'S INCREDIBLE PIZZA

12   CO. mark.

13       4.    There are currently eight JOHN'S INCREDIBLE PIZZA CO. stores

14   operating in California and two under construction.  The location of these stores

15   and their opening dates are as follows:

| City | Opened |
|---|---|
| Victorville, CA | September 1997 |
| Bakersfield, CA | November 1998 |
| Fresno, CA | June 2000 |
| Stockton, CA | August 2002 |
| Modesto, CA | July 2003 |
| Montclair, CA | January 2005 |
| Roseville, CA | March 2007 |
| Riverside, CA | October 2007 |
| Buena Park, CA | July 2009 (est.) |
| San Diego, CA | January 2010 (est.) |

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DECLARATION OF JOHN PARLET IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

2

PortInd2-4755049.2 0061355-00004

**B.    JIPC'S Federal and State Registrations**

5.    JIPC owns the following and other federally registered service marks, which were granted by the U.S. Patent and Trademark Office (the "USPTO") and appear on its Principal Register:

| Mark | Reg. No. | Reg. Date |
|---|---|---|
| JOHN'S INCREDIBLE PIZZA CO. | 3,025,377 | 12/13/2005 |
| JOHN'S INCREDIBLE PIZZA CO. | 3,058,427 | 02/14/2006 |
| JOHN'S INCREDIBLE PIZZA CO. ALL YOU CAN EAT FOOD & FUN (and design) | 3,061,612 | 02/28/2006 |
| JOHN'S INCREDIBLE PIZZA CO. ALL YOU CAN EAT FOOD & FUN (and design) | 3,099,682 | 06/06/2006 |
| EXPERIENCE THE INCREDIBLE! | 3,019,206 | 11/25/2005 |
| EXPERIENCE THE INCREDIBLE! | 3,049,057 | 01/24/2006 |

6.    JIPC also owns the following and other service marks registered with the California Secretary of State:

| Mark | Reg. No. | Reg. Date |
|---|---|---|
| JOHN'S INCREDIBLE PIZZA CO. | 058668 | 01/21/2004 |
| JOHN'S INCREDIBLE PIZZA CO. | 059016 | 04/12/2004 |
| JOHN'S INCREDIBLE PIZZA CO. ALL YOU CAN EAT FOOD & FUN (and design) | 059018 | 04/12/2004 |
| JOHN'S INCREDIBLE PIZZA CO. ALL YOU CAN EAT FOOD & FUN (and design) | 059015 | 04/12/2004 |
| EXPERIENCE THE INCREDIBLE! | 059017 | 04/12/2004 |

True and correct copies of JIPC's above California registrations are attached hereto as Exhibit 1.

**C.    JIPC's Use of the JOHN'S INCREDIBLE PIZZA CO. and INCREDIBLE PIZZA CO. Marks.**

7.    The first JOHN'S INCREDIBLE PIZZA CO. store opened in Victorville, California in September 1997.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DECLARATION OF JOHN PARLET IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

3

Portlnd2-4755049.2 0061355-00004

8.     In connection with the opening, we developed a layout for how the name and logo would appear on the interior and exterior signage and in advertising and marketing material.  My intent was to use a layout that conveyed two separate but interrelated concepts to customers when they viewed the JOHN'S INCREDIBLE PIZZA CO. name or logo.

9.     The first concept focused on JOHN'S and conveyed the idea that there was an actual person—John Parlet—who stood behind the business and worked hard to make sure that every customer received the best quality food and service available.

10.     The second concept was embodied in INCREDIBLE PIZZA CO. and reflected my goal that every customer be drawn in the door with the promise  of something unique, exciting and even a little mysterious, and leave convinced that their expectations had not only been meet, but exceeded.  I wanted INCREDIBLE PIZZA CO. to suggest to potential customers that what we offered was not the ordinary family restaurant cliché; it was a one-of-a-kind experience:  an all-you-can-eat buffet with themed dining rooms with games and attractions and party rooms—all rolled into one and executed on a huge scale.

11.     The exterior signage at the Victorville store, shown in the photos attached as Exhibit 2,  illustrates our efforts to come up with an arrangement that conveyed JOHN'S and INCREDIBLE PIZZA CO. both as separate elements and a composite whole.  The sign on the building itself is shown below in the detail on the left.  The JOHN'S appears above, and in a different size font than, INCREDIBLE PIZZA CO.  The JOHN'S is in white with a light blue outline and shadowing.  INCREDIBLE appears in the center and is emphasized using an eye-catching gradient shading from yellow to orange.  PIZZA CO. appears below in red.  The same concept was used with even greater effect on the street-side tower sign, shown below in the detail on the right.  While the same color scheme is used, there is an even greater separation between JOHN'S and INCREDIBLE PIZZA

1    CO., with JOHN'S placed in the top hemisphere of a globe while INCREDIBLE

2    PIZZA CO. is superimposed on a ribbon that wraps around the center of the globe.



10        12.    Although there have been minor variations in execution, we continue

11   to use the same concepts first used at the Victorville when displaying JOHN'S

12   INCREDIBLE PIZZA CO. in signage and in our advertising and marketing

13   literature.  Examples are shown in the following details from the exterior sign on

14   the Bakersfield store (Exhibit 3) and a brochure from approximately 2000 showing

15   a later refinement of the "globe" logo (Exhibit 4).




23        13.    JIPC also uses its registered EXPERIENCE THE INCREDIBLE!

24   mark to draw attention to and emphasize its INCREDIBLE PIZZA CO. mark.  The

25   EXPERIENCE THE INCREDIBLE! mark was first used in the Victorville store

26   when it opened in September 1997.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DECLARATION OF JOHN PARLET IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION                5

Portlnd2-4755049.2 0061355-00004

14.     The EXPERIENCE THE INCREDIBLE! mark is featured prominently in marketing literature (Exhibit 5), signage (Exhibit 6), and as an element in a composite "globe" mark (Exhibit 7.)

15.     In March 2002, JIPC first used a composite "globe" mark that included the phrase ALL YOU CAN EAT FOOD & FUN underneath the globe:



This phrase was chosen as an element because of my belief that while the INCREDIBLE PIZZA CO. element of the mark evoked the unique experience offered by JIPC, it did not inform potential customers that the experience included an all you can eat buffet, plus games and amusements.

**D.     The Assignment and Licensing of JIPC's Marks**

16.     The Victorville store was originally owned and managed by John's Incredible Pizza Co., Inc. ("JIPC, Inc."), a California corporation formed on June 3, 1997.  At the time, I was president, CEO and the sole shareholder and owner of JIPC, Inc.

17.     On May 11, 1998, I incorporated JIPC for the purpose of controlling the JOHN'S INCREDIBLE PIZZA CO. brand's intellectual property and serving as the managing entity for all JOHN'S INCREDIBLE PIZZA CO. stores.

18.     On March 31, 1999, JIPC, Inc. transferred to JIPC by written assignment all right, title, and interest in the JOHN'S INCREDIBLE PIZZA CO. name, including all trademark rights in the name, together with the associated

Stoel Rives LLP
Attorneys At Law
Portland

DECLARATION OF JOHN PARLET IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION                                      6

Portlnd2-4755049.2 0061355-00004

1   goodwill, and JIPC immediately granted back a license to JIPC, Inc. to use the

2   mark.  Each agreement was executed by me as an officer of JIPC and JIPC, Inc.

3       19.     It was my intent and understanding at the time I executed the

4   documents that the Assignment and license also included all trademark rights in

5   INCREDIBLE PIZZA CO. and EXPERIENCE THE INCREDIBLE, and all other

6   names or marks then in use by JIPC, Inc. that included the word INCREDIBLE,

7   both with and without designs (collectively, the "INCREDIBLE Marks"), together

8   with associated goodwill.  That continues to be my understanding of the

9   Assignment and license agreement.  True and correct copies of the Assignment and

10  license agreement entered into between JIPC and JIPC, Inc. are attached as,

11  respectively, Exhibits 1 and 2 to the May 8, 2009 Declaration of Betty Parlet.

12      20.     Since March 31, 1999, each JOHN'S INCREDIBLE PIZZA CO. store

13  has been licensed to use the INCREDIBLE Marks pursuant to one or more oral or

14  written license agreements with JIPC.  From time to time, JIPC updates the form of

15  license agreement it uses with its licensees.  For example, attached as Exhibits 2

16  through 5 to the May 8, 2009 Declaration of Betty Parlet are the successive license

17  agreements and amendments that have been entered into by JIPC and JIPC, Inc.

18      21.     In June 2004, JIPC adopted an updated form of license agreement.

19  Due to a misunderstanding while executing the agreements, I inadvertently signed

20  the signature block provided for JIPC, Inc. in two of the agreements: one between

21  JIPC and JIPC, Inc. with an effective date of March 31, 1999 and one between

22  JIPC, Inc. and JIPCOB, Inc. with an effective date of November 1, 1998.[1]  At the

23  time I was no longer an officer of JIPC, Inc. (although I had been as of the effective

24  dates).  Copies of these two documents are attached as Exhibit 8.

25

26  _____

27      [1] In late 2007, ownership of Bakersfield was transferred to Incredible
    Concepts, Inc., a fully-owned subsidiary of JIPC Incredible Concepts Holding
    Company, Inc., a company for which I am the majority, controlling shareholder.

28

Stoel Rives LLP
Attorneys At Law
Portland

DECLARATION OF JOHN PARLET IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION                                                  7

Portlnd2-4755049.2 0061355-00004

22.    The signature block error was caught during preparation for my August 15, 2007 deposition in the Trademark Trial and Appeal Board proceeding. Both agreements were re-executed that same day, with my ex-wife Betty signing on behalf of JIPC, Inc. as its president.  True and correct copies of the re-executed agreements are attached as Exhibits 5 and 7 to the Declaration of Betty Parlet.

**E.    The Geographic Scope of JIPC's Use of the INCREDIBLE Marks.**

23.    It has always been my belief that one of the best and most effective methods of advertising and promotion is through word of mouth.  A customer who comes away happy and satisfied and tells friends, acquaintances or relatives about the INCREDIBLE experience is a very powerful selling tool.  For this reason, JIPC has always relied on word of mouth as one of its primary promotional tools.

24.    When JIPC does engage in non-word of mouth advertising and marketing, it does so primarily at the local and regional level in California, where JIPC's operations and stores are located.  JIPC advertising and marketing is conducted through multiple channels, including newspaper advertisements, brochures, coupons, direct mail, gift cards, and the JOHN'S INCREDIBLE PIZZA CO. VIP Card frequent customer program.

25.    JIPC also uses its Internet web site as a tool for marketing to the customers and potential customers of its California stores.  JIPC has never undertaken any concerted effort to solicit or direct potential customers outside of California and the surrounding states to visit its website.  Until approximately March 2008, JIPC merely used its website to make information about its California stores available to potential customers and did not offer any goods for sale or interactive services through its website.  Since March 2008, JIPC has sold through its website, gift cards for use in its California stores and has provided an online interface for customers to book reservations for parties at its stores.

26.    JIPC has never engaged in advertising or promotion of its goods and services targeted to a nationwide audience.  It's advertising and promotion of its

Stoel Rives LLP
Attorneys At Law
Portland

DECLARATION OF JOHN PARLET IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

8

Portlnd2-4755049.2 0061355-00004

goods and services has always focused on the geographic locations where its stores are located.  However, inasmuch as California is a popular destination for tourists, to the extent someone from outside California is exposed to JIPC's marketing or advertising while visiting the state, then all of JIPC's local and regional advertising necessarily constitutes an effort to expand the reputation or fame of its restaurants and entertainment centers either nationally or to reach outside of California.

27.    JIPC has never undertaken a concerted effort to target potential customers outside of California and the surrounding states.  At the same time, JIPC has never intentionally sought to prevent its advertising and promotional material from travelling outside of California.  JIPC recognizes that in today's world, it is possible that some of its advertising and promotion material may have travelled and been viewed outside of California and the adjacent states.  JIPC also recognizes that inasmuch as its Internet website may be accessed from locations throughout the nation and the world, its Internet website may be viewed by potential customers outside of California and the surrounding states who stumble upon it.

28.    While JIPC welcomes any benefit it might derive from the possible viewing of its advertising and promotion material outside of California and the adjacent states, JIPC is unaware of  any evidence that JIPC's marks have established a significant reputation among potential purchasers in any area outside of California and the adjacent states.

29.    I understand that IPC thinks it significant that JIPC has welcomed the patronage of customers from outside California who have visited its stores and that JIPC has never taken steps to discriminate against these customers by screening them out and refusing them service.  JIPC does not discriminate against customers.  We welcome all customers, from wherever they might reside.

30.    While JIPC has welcomed the patronage of customers from all over the country since the Victorville store first opened in 1997, these customers have historically made up only small portion of the many tens of thousands of customers

Stoel Rives LLP
Attorneys At Law
Portland

DECLARATION OF JOHN PARLET IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION                                                9

Portlnd2-4755049.2 0061355-00004

1  JIPC serves every week.  Aside from customers from bordering states such as

2  Arizona and Nevada, JIPC is unaware of any evidence that JIPC has served

3  customers from any one state in any significant number, let alone numbers that

4  would make up any meaningful portion of the communities in which they live or

5  establish the reputation of JIPC's marks in those communities.

6      31.    JIPC does have a substantial number of customers that visit its stores

7  from bordering states such Arizona and Nevada.  This is due in part to the fact that

8  several JIPC stores, such as Riverside and Victorville, are located right off of major

9  interstate highways that run from Los Angeles to major cities such as Las Vegas

10  and Phoenix.  For this reason, JIPC has always viewed the Las Vegas and Phoenix

11  markets as natural choices for JIPC's expansion.

12      32.    The JOHN'S INCREDIBLE PIZZA CO. restaurants have been the

13  subject of, or mentioned in, articles published in magazines and newspapers with

14  local, and occasionally national, circulation.  Only a few articles have appeared in

15  national publications and in every case, the publication was directed to the trade

16  and not to potential purchasers.

17      33.    It has always been and continues to be my goal to expand the JOHN'S

18  INCREDIBLE PIZZA CO. brand both nationally and internationally.  Over the

19  years, I have had discussions regarding opening stores in Arizona, Colorado,

20  Nevada, and Oregon, among others.  Currently, I am actively pursuing and have

21  provided a letter of intent to lease a site for a 56,000 square foot store in Nevada.

22  This site is only one of several locations in states outside of California that I am

23  currently pursuing.  Once a lease for the Nevada site is finalized, we can complete

24  the build-out of the store and have it ready to open within a year's time.

25

26  **F.    JIPC's Efforts to Prevent IPC's Use of the INCREDIBLE Marks.**

27      34.    In my July 3, 2008 declaration in support of JIPC's motion for

28  preliminary injunction, I recited the long history of how Rick Barsness copied the

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DECLARATION OF JOHN PARLET IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION                                          10

Portlnd2-4755049.2 0061355-00004

1  INCREDIBLE PIZZA CO. name from JIPC and used it to open his own chain of

2  family entertainment centers that offered the same services and concept as JIPC.   I

3  also talked about how Rick repeatedly ignored my demands that he stop using the

4  name.

5      35.    It is important to emphasize that JOHN'S INCREDIBLE PIZZA CO.

6  was not something that Rick was vaguely aware of.  In the year or two leading up to

7  the opening of the Victorville store, I repeatedly shared with Rick my plans for the

8  concept and how it was going to be called JOHN'S INCREDIBLE PIZZA CO.

9  After Victorville opened, Rick came to visit the store and I shared with him the

10  revenue numbers the store was generating.  Rick, who was still a Mr. Gatti's

11  franchisee at the time, appeared, and told me that he was, very impressed.

12      36.    At no time did Rick ever mention the possibility that he was going to

13  open up his own restaurant using the INCREDIBLE PIZZA CO. name, nor did he

14  ever ask my permission to use the name.

15      37.    I have never pulled my punches in my conversations with Rick and

16  since I first found out that he was planning to use the INCREDIBLE PIZZA CO. I

17  have consistently voiced my objection using the most blunt of terms.  While Rick

18  told me on multiple occasions that he was seriously considering picking, or would

19  pick, another name, it later became clear that he was making these statements only

20  as part of an effort to convince me to agree that he could use the name in some part

21  of the country other than California.

22      38.    While there were occasions after I first voiced my objections to Rick's

23  use of the name where Rick and I would run into each other and not discuss the

24  name, I have never said or done anything that would suggest to Rick—or anyone

25  else—that JIPC did not continue to object to IPC's use.  Rick knows me.  Rick

26  knows I don't mince my words.  Rick also knows that I conduct my business in the

27  belief that my word is my reputation and that when I say something, I mean it and

28  stick to it.

Stoel Rives LLP
Attorneys At Law
Portland

DECLARATION OF JOHN PARLET IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

11

Portlnd2-4755049.2 0061355-00004

39.     I have been in the restaurant and entertainment business for over 25 years.  Though the years I have spoken to a lot of people in the industry.  In particular, I have spoken to many people in the industry about Rick's general reputation for truth and veracity and have heard many people in the industry talk about the same.  Through these discussions, I have become familiar with Rick's general reputation in the industry for truth and veracity.  Rick has long had, and still has today, a bad reputation in the industry for truth and veracity.

40.     I understand that IPC suggests that the cease and desist letter JIPC sent to IPC and its first franchisee in March 2004 somehow demonstrates that JIPC waited too long to sue IPC.  IPC ignores the context in which the letter was sent.

41.     In February 2004, IPC was still operating a single IPC store in Springfield, Missouri.  It was a store that IPC had opened in late 2002 with full knowledge that JIPC objected to IPC's use of the INCREDIBLE PIZZA CO name.

42.     On or about February 25, 2004, a brief article on IPC appeared in the *Chain Leader*, an industry publication.  At the end of the article there was a mention that IPC had recently signed a development agreement with the French Companies to open 30 IPC stores.  Other than stating that the units would be "in the southern United States," with the first units in Oklahoma City and Houston, the article did not state where the units would be located.  A true and correct copy of the article is attached as Exhibit 9.

43.     The article marked the first time JIPC became aware that IPC planned to franchise under the INCREDIBLE PIZZA COMPANY name.  JIPC became concerned that IPC's agreement with the French Companies might include units in southern California, where JIPC did business.  After consulting with our attorneys at the time, the decision was made to send cease and desist letters to IPC and the French Companies.  The letters were sent March 16, 2004.  The letter to IPC is attached to my July 8, 2008 Declaration as Exhibit 18.  A true and correct copy of the letter to the French Companies is attached hereto as Exhibit 10.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DECLARATION OF JOHN PARLET IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

12

Portlnd2-4755049.2 0061355-00004

44.     Two weeks later, IPC's attorneys responded in a letter and asserted that JIPC could not assert any rights in its marks against IPC because neither IPC nor its franchisee were doing business in California, or had any plans to do so.

45.     Unable to locate any evidence to contradict IPC's claim that the parties were not using the marks in overlapping geographic territories. JIPC, after retaining and consulting with its current counsel, elected to pursue cancellation of IPC's federal registration before the Trademark Trial and Appeal Board.  JIPC filed its petition to cancel on May 21, 2004.

46.     Even after commencing the cancellation action, JIPC maintained a watch for signs of any effort by IPC to encroach on JIPC's geographic territory. For example, in 2006 JIPC became aware that a possible IPC franchisee was searching for potential sites in the Las Vegas, Nevada market.  JIPC promptly sent a cease and desist letter to the franchisee advising them of JIPC's federal registrations and presumptive rights to use the mark anywhere in the country and pointing to the disclosure about the parties' trademark dispute in IPC's Uniform Franchise Offering Circular.  A true and correct copy of the letter is attached hereto as Exhibit 11.

**G.     Actual Confusion.**

47.     Since I provided my July 3, 2008 declaration, JIPC has become aware of additional instances of actual confusion.  Attached as Exhibit 12, are a number of comments and inquiries JIPC has received in the past year through the comments and information request form located on JIPC's Internet website.  These include:

- An inquiry from Barry Thompson of the Mesquite Independent School District asking for "info about mesquite tx store."  JIPC does not have a store in Mesquite, TX, but an IPC franchisee operates a "Mesquite's Incredible Pizza Company" in that city.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DECLARATION OF JOHN PARLET IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

13

Portlnd2-4755049.2 0061355-00004

- An inquiry from "Lori" asking "please send me promotions for the week for missouri area." JIPC does not have a store in Missouri, but IPC's Springfield store is located in Missouri;

- An inquiry from Theresa Lipson asking "any idea when the phoenix location will open????" JIPC does not have a store currently under development in Phoenix, but an IPC franchisee does.

- An inquiry from Maria Denogean, an employee IPC's Memphis, Tennessee store, who raised the following question about JIPC's Bakersfield, California store: "I am currently working at the incredible pizza in Memphis Tennessee and I was just woundering [sic] if it was possible if I could transfer from there to here?"

48.    Each of these inquiries were made through a comments/inquiry form that the user of JIPC's website only reaches after clicking the "Contact" link from the main page. The main page and the contact page, like every page on the site, has the JOHN'S INCREDIBLE PIZZA CO. mark prominently displayed on the top of the page. True and correct print-outs of these pages are attached as Exhibit 13.

49.    In my experience, even individuals who might be considered sophisticated experience confusion when they have encountered IPC's marks. For example, Larry Turner, the president of a financing company that had helped us finance the opening of the Fresno store in 2000, recently got in touch with me after he had gone on the Internet to catch up on how JIPC was doing, only to end up on IPC's website. Until he spoke to me, Larry was under the impression that JIPC and IPC were affiliated. I had to explain that there was no relation between the two.

50.    Another example of confusion relating to IPC's NASCAR sponsorship recently occurred while I was on the site of JIPC's forthcoming Buena Park location. A contractor working on the build out commented to me that he had seen "your race car" on television. I had to explain that the car was sponsored by IPC, and not affiliated with JIPC.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DECLARATION OF JOHN PARLET IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION                                    14

Portlnd2-4755049.2 0061355-00004

51.     I also continue to encounter vendor confusion at trade shows.  For example, at one recent show I was looking at a piece of equipment at a vendor booth, when the vendors' representative, upon learning that I was with John's Incredible Pizza Co., said, "your company just ordered two of these."  It subsequently came out that he was referring to IPC.  I had to explain that IPC was not the same as or affiliated with JIPC.

52.     Due to the actual confusion we frequently encounter, I and other JIPC personnel have had to expend time and resources to correct the misimpression that JIPC and IPC are the same or affiliated, or that JIPC sponsors the NASCAR team.

53.     Once I prevail and secure an injunction and other remedies against IPC's intentional and knowing adoption and use of INCREDIBLE PIZZA COMPANY, a corrective advertising campaign will be required to inform the trade and consumers that there is no relationship between Rick's company (or its franchisees) and JOHN'S INCREDIBLE PIZZA CO.  Such advertising will necessarily have to wait until the conclusion of the trial so that I will be able to accurately convey the scope and type of remedy, and secure a damage award to pay for the campaign.

54.     With respect to the trade, I intend to place advertisements in leading trade publications in order to inform the trade, among other things, that there is no connection between my company and Rick's (or his franchisee).  In light of Rick's bad reputation in the industry, any association between him and my business is damaging to the reputation and good will that I and my business enjoy.

55.     With respect to consumers, I expect to place advertisements in newspapers and magazines, as well as on television and radio, in at least Nevada, Arizona and California in an effort to differentiate my business from that of Rick's (and his franchisees).  I may also place fliers in my stores indicating that we have

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

DECLARATION OF JOHN PARLET IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

15

Portlnd2-4755049.2 0061355-00004

1    no association with the stores formerly operating under the INCREDIBLE PIZZA

2    COMPANY name outside of California and to apologize for any bad experience

3    my customers may have had at those stores.

4          56.    I take great pride in the experience that we provide to our customers.

5    That experience is the most effective means of maintaining and expanding our

6    customer base. I don't want a bad experience at one of Rick's stores to hurt my

7    business, and I don't want my efforts to benefit Rick. In light of the evidence of

8    actual confusion among consumers, vendors and job applicants between my

9    business and Rick's (or his franchisees), it is apparent that Rick's intentional

10   adoption of INCREDIBLE PIZZA COMPANY has had its desired effect of trading

11   on my company's good will and concepts, and that no amount of advertising will

12   fully remedy the confusion and damage he has caused. Nevertheless, some of the

13   continuing damage inflicted on my business will be mitigated through an effective

14   corrective advertising campaign following the completion of this case, with such

15   campaign to be funded by a damage award against IPC for that purpose.

16         I declare under penalty of perjury that the foregoing is true and correct.

17   Dated this 11th day of May, 2009.

18                                              John Parlet

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JOHN PARLET IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION                                    16

Portlnd2-4755049.2 0061355-00004