Lawrence P. Ebiner (State Bar No. 122293)
larry.ebiner@hro.com
Blaine J. Benard (UT State Bar No. 005661) (Admitted *pro hac vice*)
blaine.benard@hro.com
HOLME ROBERTS & OWEN LLP
800 West Olympic Blvd., 4th Floor
Los Angeles, CA  90015
Telephone:  (213) 572-4300
Facsimile: (213) 572-4400

Glenn S. Bacal (AZ State Bar No. 006812) (admitted *pro hac vice*)
glenn.bacal@hro.com
Steven C. Lawrence (AZ State Bar No. 022551) (admitted *pro hac vice*)
steve.lawrence@hro.com
HOLME ROBERTS & OWEN LLP
16427 North Scottsdale Road, Suite 300
Scottsdale, AZ  85254-1597
Telephone:  (480) 624-4500
Facsimile: (480) 624-4599

Attorneys for Defendants Incredible Pizza Co., Inc.
and Incredible Pizza Franchise Group, LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| JIPC Management, Inc.<br><br>                    Plaintiff,<br><br>        v.<br><br>Incredible Pizza Co., Inc.; Incredible Pizza Franchise Group, LLC; and CJM Racing, LLC<br><br>                    Defendants. | Case No. CV08-04310 MMM (PLAx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING**<br><br>**Pretrial Conference**<br>**Date:  July 13, 2009**<br>**Time:  9:00 a.m.**<br>**Courtroom:  Roybal 780**<br>**Judge:  Hon. Margaret R. Morrow** |

1

**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT Defendants Incredible Pizza Co., Inc. and Incredible Pizza Franchise Group LLC ("Defendants") hereby move for an order *in limine* precluding Plaintiff JIPC Management, Inc. from presenting the testimony and reports of Dr. Bruce R. Isaacson, and to preclude him from testifying at all at trial. Such evidence should be excluded, and Dr. Isaacson should be precluded from testifying, because (1) Dr. Isaacson's testimony is not supported by a proper consumer survey or any other independent marketing research; (2) Isaacson reports and deposition testimony opine on the ultimate issue of likelihood of confusion, and he is likely to do that at trial; (3) Isaacson's analysis and conclusions will not assist the trier of fact; (4) Isaacson's "conclusions" are completely speculative; (5) Isaacson is not qualified as an expert on the issues for which he is offered; (6) Isaacson's submitted an improper "sur-rebuttal" after the expert and rebuttal expert disclosure deadline; and (7) the methodology of Isaacson's "analysis" in his sur-rebuttal did not follow generally accepted principles and did not support his conclusions.

The Motion is based on this Notice and the attached Memorandum of Points and Authorities, the entire record before the Court, and any further briefing and argument as may be provided.

Dated:  June 22, 2009                    HOLME ROBERTS & OWEN LLP


By:  *s/Steven C. Lawrence*
        Blaine J. Benard
        Lawrence P. Ebiner
        800 W. Olympic Blvd., 4th Floor
        Los Angeles, CA  90015
        Telephone:  (213) 572-4300
        Facsimile: (213) 572-4400

**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING**

Glenn S. Bacal
Steven C. Lawrence
Promenade Corporate Center
16427 North Scottsdale Road, Suite 300
Scottsdale, AZ  85254-1597
Telephone:  (480) 624-4500
Facsimile: (480) 624-4599

Attorneys for Incredible Pizza Co., Inc.
and Incredible Pizza Franchise Group,
LLC;

**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING**

1

## <u>Table of Contents</u>

2    I.      Introduction...........................................................................................1

3    II.     Argument ............................................................................................1

4
5            A.      Isaacson's reports and testimony are not supported by a consumer survey
                     or any other independent marketing research................................................2

6
7            B.      Isaacson improperly opines on the ultimate issue for the jury...................5

8            C.      Isaacson's testimony would confuse rather than assist the trier of fact.......6

9
10           D.      Isaacson's conclusions are completely speculative, and in many instances
                     are based on misinformation or no information. ......................................10

11
12           E.      Isaacson lacks the necessary knowledge and experience to testify as an
                     expert on the issues for which he is offered. .............................................11

13           F.      Isaacson's Sur-Rebuttal is untimely, improper, and inadmissible.............13

14
15           G.      Isaacson's methodology in his Sur-Rebuttal does not follow generally
                     accepted principles and does not support his conclusions.........................14

16   III.    Conclusion .......................................................................................18

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS
AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING**

1

## **Table of Authorities**

2

3

## **FEDERAL CASES**

4    *Aerojet-General Corp. v. Cincinnati Screen Process Supplies,*

5          *Inc.*, 172 U.S.P.Q. 114 ...................................................................15

6    *Andrews v. Metropolitan N. Commuter R.R. Co.,*

7          882 F.2d 705 ...................................................................................6

8    *Cairns v. Franklin Mint Co.,*

9          24 F.Supp.2d 1013 ..........................................................................4

10   *Daubert v. Merrell Dow Pharms, Inc.,*

11         509 U.S. 579, 113 S.Ct. 2786 ...................................... 1-4, 10, 14

12   *Essence Commc'ns, Inc. v. Singh Industrial, Inc.,*

13         703 F.Supp. 261 ..............................................................................4

14   *Franklin Resources, Inc. v. Franklin Credit Management Corp.,*

15         988 F.Supp. 322 ............................................................................16

16   *General Motors Corp. v. Cadillac Marine & Boat Co.,*

17         226 F.Supp. 716 ............................................................................17

18   *Hutchinson v. Essence Commun's, Inc.,*

19         769 F.Supp. 541 ............................................................................15

20   *Inc. Public Corp. v. Manhattan Magazine, Inc.,*

21         616 F.Supp. 370 ............................................................................11

22   *Instant Media, Inc. v. Microsoft Corp.,*

23         2007 U.S.Dist. LEXIS 61443 .........................................................4

24   *Jinro America, Inc. v. Secure Investments, Inc.,*

25         2001 U.S.App. LEXIS 25987 ........................................................12

26   *Jones v. Lincoln Electric Co.,*

27         188 F.3d 709 ..................................................................................12

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING**

*M2 Software, Inc. v. Madacy Entertainment*,

    421 F.3d 1073 ............................................................14

*Malletier v. Dooney & Bourke, Inc.*,

    525 F.Supp.2d 558 .....................................................2, 6

*Marcalus Manufacturing Co. v. Watson*,

    156 F.Supp. 161 .........................................................15

*New Century Financial, Inc. v. New Century Financial Corp.*,

    2005 U.S.Dist. LEXIS 45960 ..................................... 3-4

*New Colt Holdings Corp. v. RJG Holdings of Fla., Inc.*,

    2003 U.S.Dist. LEXIS 25309 .......................................6

*Patsy's Italian Restaurant v. Banas d/b/a Patsy's Pizzeria*,

    531 F.Supp.2d 483 .......................................................3

*Pharmacia Corp. v. Alcon Laboratoriess, Inc.*,

    201 F.Supp.2d 335 .......................................................5

*Playboy Enterps., Inc. v. Terri Welles, Inc.*,

    78 F.Supp.2d 1066 .......................................................5

*Sheller-Globe Corp. v. Scott Paper Co.*,

    204 U.S.P.Q. 329 .......................................................17

*Smith v. Ames Department Stores, Inc.*,

    988 F.Supp. 827 ...........................................................4

*Starter Corp. v. Converse, Inc.*,

    170 F.3d 286 ..............................................................16

*United States v. Miller*,

    874 F.2d 1255 ............................................................12

*United States v. Perkins*,

    470 F.3d 150 ................................................................6

*Utah Medical Products, Inc. v. Clinical Innovations Associates, Inc.*,

    2000 U.S.App. LEXIS 31756 ......................................4

**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING**

# FEDERAL STATUTES

Fed. R. Evid. 403 ...........................................................................1, 2, 10, 17

Fed. R. Evid. 702 .......................................................................1, 2, 4, 11, 18

**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING**

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.    Introduction

Defendants Incredible Pizza Co., Inc. and Incredible Pizza Franchise Group LLC ("Defendants") respectfully submit their Motion in Limine No. 1 Re: Expert Report and Testimony of Dr. Bruce Isaacson ("Isaacson").  Defendants respectfully request that the Court exclude Isaacson's April 10, 2009 Report ("Initial Report," attached as Exhibit 1) and Isaacson's May 15, 2009 Report ("Sur-Rebuttal," Attached as Exhibit 2), and preclude Isaacson from providing expert testimony in this case. Alternatively, Defendants request that the Court exclude such portions of Isaacson's reports and testimony that are inadmissible under Rules 701, 702, and 403 of the Federal Rules of Evidence.

Isaacson's reports and testimony should be excluded because (1) Isaacson's reports and testimony are not supported by any concrete evidence or data, such as consumer surveys or properly conducted marketing research; (2) Isaacson improperly opines on the ultimate issue of likelihood of confusion; (3) Isaacson's analysis and conclusions will not assist the trier of fact to determine whether the IPC Mark is likely to cause confusion among consumers; (4) Isaacson's "conclusions" are based solely on unsupported speculation; and (5) Isaacson lacks the necessary knowledge and experience to provide expert testimony on the issues for which he is offered.

Isaacson's Sur-Rebuttal also should be excluded because (1) it was not disclosed until May 15, 2009, long after the expert and rebuttal expert disclosure deadline; and (2) the methodology of Isaacson's "analysis" in his Sur-Rebuttal does not follow generally accepted survey principles and does not support his conclusions.

### II.    Argument

Under *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 592-93, 113 S. Ct. 2786, 2796 (1993), the Court must decide "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue."  In other words, the court must determine whether the proposed testimony

**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING**

"both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597, 113 S. Ct. at 2796. Rule 702 of the Federal Rules of Evidence provides that an expert may testify only "if (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case." Pursuant to Rule 403, the Court may exclude even relevant evidence "if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Based on these standards, Isaacson's testimony is inadmissible.

### A.    Isaacson's reports and testimony are not supported by a consumer survey or any other independent marketing research.

Isaacson intends to testify that "that a substantial percentage of customers are likely to confuse IPC and JIPC, and believe that the two companies are either the same, or share a connection or affiliation." [Initial Report ¶ 81] His opinions, however, do not "rest[] on a reliable foundation" and are not "relevant to the task at hand," *Daubert*, 509 U.S. at 597, 113 S. Ct. at 2796, because he conducted no consumer survey or any independent marketing research. "The Court's gatekeeper function is of heightened importance [in trademark cases] because the 'pivotal legal question . . . ***virtually demands*** [expert] survey research . . . on [issues such as] consumer perception . . . ." *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 562 (S.D.N.Y. 2007) (emphasis added) (citation omitted). Indeed, Isaacson lamented during his deposition that he was not permitted to conduct any survey in this case, and that he "would prefer to have conducted a likelihood of confusion survey" because he believed "that it would confirm a number of things that [he had] opined upon but didn't have the opportunity to measure in this matter."[1] [Isaacson Deposition at 16:12-20, attached as Exhibit 3] When asked if he had "any information or knowledge about what percentage of

---

[1] Although Isaacson had suggested a survey to counsel for JIPC, Isaacson testified that he was unable to do so because of time and budget constraints. [Id. at 17:15-20:15]

DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING

1  customers would possibly be confused," Isaacson again responded, "I don't have a
2  survey on it."  [Id. at 138:19-24]  Isaacson also repeatedly admitted he could not
3  quantify the results of his analysis.  [Id. at 110:11; 118:2-3; 138:6-23; 173:17-174:3]

4          Numerous courts have rejected expert reports and testimony based on the
5  expert's failure to conduct consumer surveys or engage in other marketing research.
6  For example, in *Patsy's Italian Restaurant v. Banas d/b/a Patsy's Pizzeria*, 531 F.
7  Supp. 2d 483 (E.D.N.Y. 2008), the court excluded an expert witness because the
8  expert conducted no survey, made conclusions that were speculative, and made
9  comparisons between the parties' marks that jurors could make for themselves.  *Id.* at
10  484-85.  Following *Daubert*'s standard that an expert report must be based on "more
11  than subjective belief or unsupported speculation," the court rejected the expert's
12  report because it was based not on any survey evidence but on "his own personal
13  knowledge and expertise."  *Id.* at 485.  Thus, "testimony based solely on [the expert's]
14  personal opinion on the issue of likelihood of confusion should not be permitted
15  because it would usurp the jury's role in making fact determinations."  *Id.*   Similarly,
16  Isaacson's Initial Report, and to a large degree his Sur-Rebuttal, are based on his own
17  subjective beliefs about the facts and unsupported speculation about likelihood of
18  confusion rather than any actual survey evidence.

19          Likewise in *New Century Financial, Inc. v. New Century Financial Corp.*, 2005
20  U.S. Dist. LEXIS 45960 (S.D. Tex. Nov. 29, 2005), the court held that "the expert's
21  testimony and the ultimate conclusion on the issue of confusion must be based on results
22  from surveys and studies *the expert has conducted*."  *Id.* at *7 (emphasis added).
23  Recognizing its authority to "exclude an expert's testimony if it is based on speculations
24  designed to bolster a party's position," the court rejected the testimony of an expert that
25  simply "assumed the existence of confusion in the marketplace and did not conduct any
26  independent survey, study or market research to confirm whether there was confusion."
27  *Id.* at 8.  The court rejected the expert's testimony under *Daubert* because (1) the expert's
28  "conclusion was based primarily on facts supplied to him"; (2) he "did not conduct an

**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING**

1    independent study or research or analysis"; and (3) "[h]is conclusion was not based on

2    any reliable principles and methods, as none were employed by him to make his

3    conclusion." *Id.* at *8-9; *see also Utah Med. Prods., Inc. v. Clinical Innovations Assocs.,*

4    *Inc.*, 2000 U.S. App. LEXIS 31756 (Fed. Cir. Dec. 13, 2000) (excluding expert testimony

5    in false advertising case where expert "did not study, or gather any evidence that

6    consumers" would be deceived).  Because Isaacson conducted no survey research, made

7    conclusions based primarily on facts supplied to him by JIPC, and utilized no methods

8    (let alone reliable methods) to opine on possible consumer perceptions, Isaacson's

9    testimony should be excluded under *Daubert* and Fed. R. Evid. 702.

10           Importantly, the fact that neither JIPC nor Isaacson conducted any consumer

11   survey creates a presumption that there is no likelihood of confusion, and further

12   underscores the need to exclude Isaacson's reports and testimony because there is no

13   data to support his conclusions.  *See Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d

14   1013, 1040 (C.D. Cal. 1998) (concluding that plaintiff's "failure to conduct a survey"

15   creates a "presumption that . . . the results of such a survey would be unfavorable to

16   plaintiffs"); *see also Instant Media, Inc. v. Microsoft Corp.*, 2007 U.S. Dist. LEXIS

17   61443 (N.D. Cal. Aug. 13, 2007) (concluding that plaintiff's "failure to submit its own

18   survey may support an inference that [plaintiff] predicted that the results of such a

19   survey would be unfavorable"); *Smith v. Ames Dep't Stores, Inc.*, 988 F. Supp. 827

20   (D.N.J. 1997) (rejecting expert report lacking consumer survey as unhelpful to jury)

21   ("While non-survey evidence may be appropriate in some trademark infringement

22   cases . . . , [the expert's] failure to consider data gleaned from actual consumers limits

23   its value for purposes of demonstrating how consumers view both parties' [marks].");

24   *Essence Commc'ns, Inc. v. Singh Indus., Inc.*, 703 F. Supp. 261, 269 (S.D.N.Y. 1988)

25   ("[P]laintiff's failure to offer a survey showing the existence of confusion is evidence

26   that the likelihood of confusion cannot be shown.").  Thus, the Court should exclude

27   Isaacson's reports and testimony because Isaacson failed to conduct a survey or any

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING**

marketing research, instead relying solely on his own subjective beliefs about the

purported facts and speculation regarding likelihood of confusion.

### B.    Isaacson improperly opines on the ultimate issue for the jury.

Isaacson's reports and testimony also should be excluded because he seeks to

render an opinion on the ultimate issue of likelihood of confusion.  Numerous courts

in trademark cases have excluded expert testimony that does not rely on any survey

and that instead opines on the ultimate issue of likelihood of confusion.  For example,

in *Playboy Enterps., Inc. v. Terri Welles, Inc.*, 78 F. Supp. 2d 1066 (S.D. Cal. 1999),

the court stated that it "cannot rely on any of Plaintiff's expert witness' . . . ultimate

conclusions regarding whether there was a likelihood of confusion."  *Id.* at 1081-82.

The court commented that it "will *not* allow [Plaintiff's expert] to render a legal

opinion on whether, based on all the *Sleekcraft* factors, there is a likelihood of

confusion."  *Id.* (emphasis in original).  Similarly in *Pharmacia Corp. v. Alcon Labs.,

Inc.*, 201 F. Supp. 2d 335, 377 (D.N.J. 2002), the court held that "[a]part from

consumer surveys, '[l]ay or even expert opinion about the likelihood of confusion is

inadmissible or entitled to little weight."  *Id.* at 377 (quoting Richard L. Kirkpatrick,

*Likelihood of Confusion in Trademark Law* § 1.8c, at 1-45 (1995)).

Isaacson admits that at trial he intends to opine on the issue of likelihood of

confusion.  [*See, e.g.* Isaacson Depo. 120:10-11 ("I'm expressing an opinion about the

likelihood of confusion."); Id. at 122:1-2 ("I was retained to opine on the issue of

likelihood of confusion between the parties.")]  He specifically intends to testify "that a

substantial percentage of customers are likely to confuse IPC and JIPC, and believe that

the two companies are either the same, or share a connection or affiliation."  [¶ 81]

Isaacson makes similar statements in his Sur-Rebuttal about likelihood of confusion.

[¶¶ 57, 61]  Isaacson went so far in his deposition as to guess that the level of confusion

"would be above 20 percent were we to conduct a survey."  [Isaacson Depo. at 140:3-4]

Yet, Isaacson never conducted any consumer survey or any independent

marketing research to support his ultimate findings in this case.  Although Isaacson

**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS
AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING**

attempted to defend his opinion by stating that "an expert on likelihood of confusion who has conducted research like this in prior matters could give you an estimate of what confusion would be likely to turn out were a study to be conducted" [Id. at 143:3-7], Isaacson repeatedly admitted that he "did not quantify the number here." [Id. at 110:11; 118:2-3; 138:6-23; 173:17-174:3]  Isaacson has no data, let alone reliable data, to draw the conclusions he intends to offer at trial.  Without any scientific basis for drawing any conclusions about the ultimate issue of likelihood of confusion in this case, his expert reports and testimony consist only of his personal, subjective opinion on likelihood of confusion, and therefore must be excluded.

### C.    Isaacson's testimony would confuse rather than assist the trier of fact.

Isaacson's opinions must be excluded because they would not do anything to assist the jury in deciding the issues in this case and instead would serve only to confuse the jury.  Expert testimony is inadmissible if it addresses "lay matters which [the trier of fact] is capable of understanding and deciding without the expert's help." *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989) (citing cases).  "Rule 701 forbids the admission of expert testimony dressed in lay witness clothing . . . ."  *United States v. Perkins*, 470 F.3d 150, 155-56 (4th Cir. 2006).  This rule particularly applies in trademark cases where jurors can compare the parties' marks and their uses of the marks without the need of assistance from expert testimony.  *See, e.g.*, *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 570 (S.D.N.Y. 2007) (upholding special master's exclusion of expert's report and testimony because "the jury members can observe for themselves whether [defendant's] mark is confusingly similar to [plaintiff's] mark . . . without the help of an expert"); *New Colt Holdings Corp. v. RJG Holdings of Fla., Inc.*, 2003 U.S. Dist. LEXIS 25309 (D. Conn. Aug. 11 2003) (concluding that expert testimony was not "required or useful to resolve a factual issue determined by viewing the two marks from the perspective of an ordinary consumer of the goods or services once evidence has been offered as to the characteristics of the ordinary consumer").

While Isaacson opines directly on the issue of likelihood of confusion, he bases that opinion solely on the same two events that Plaintiff claims could increase the likelihood of confusion: (1) IPC's sponsorship of a NASCAR team; and (2) IPC's offering of franchises in California.  [Initial Report, ¶¶ 11-12]  With respect to these two events, Isaacson has no expertise or even information as to how they would cause greater confusion.  For example, Isaacson admitted that he had could not quantify the effect that these events had on the issue of likelihood of confusion.  [Isaacson Depo. 110:10-11; 132:15-133:6]  While Isaacson denies that he is unfamiliar with NASCAR, Isaacson also testified that the last NASCAR event that he watched was the Indianapolis 500, which is **not** a NASCAR event at all but an IndyCar event.  [Isaacson Depo. at 131:3-11]  With respect to franchise locations, Isaacson opines that it is "much less likely that there would be confusion" "as long as the two companies operate in separate markets."  [Initial Report ¶ 11; Isaacson Depo. at 110:15-111:14]  However, Isaacson readily admits that he never "formally defined" JIPC's market area and was not asked to opine on that issue. [Isaacson Depo. at 120:14-16; 124:21-23]  Without any unique knowledge or information regarding these matters, Isaacson's opinions are unhelpful to a jury's findings on those issues.

The bulk of Isaacson's Initial Report addresses his own view of the facts regarding the parties, their respective marks, and their uses of the marks—all matters that the jurors can evaluate on their own.  Specifically, Isaacson merely relays his own view of the facts regarding (1) IPC's sponsorship of CJM racing and IPC's offering of franchises [¶¶ 11-12]; (2) what consumers "may infer" from different elements of marks [¶¶ 26-27];[2] (3) what elements of the marks might stand out to consumers [¶¶

---

[2] With respect to the elements of the IPC Mark, Isaacson admitted during his deposition that, during his analysis, he did not even notice the Ichthys, or Christian fish symbol, on the IPC Mark even though he conceded that "it is a distinguishing factor."  [Isaacson Deposition 186:7-14]

DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING

29-31];[3] (4) whether consumers might link INCREDIBLE PIZZA on marketing materials or a race car to JIPC [¶¶ 34-36]; (5) the "potential overlap" between the target markets of JIPC and IPC [¶¶ 48-54]; (6) the products, services, atmosphere, and brand offered by JIPC and IPC [¶¶ 55-62]; (7) the prices of JIPC and IPC's food and services [¶¶ 63-65]; (8) the distribution and marketing channels through which JIPC and IPC deliver their products and services [¶¶ 66-67]; (9) JIPC and IPC's promotion of their goods and services [¶¶ 68-71]; and (10) the possible levels of involvement by consumers in making decisions about whether to purchase the products and services from IPC and JIPC.[4]  [¶¶ 72-76].  Isaacson made all of these observations even though he had never visited a JIPC or IPC location prior to writing his Initial Report.[5]  [Isaacson Deposition at 103:11-20]  None of these observations requires any special expertise.[6]  Instead, each is a factual observation which lay jurors could make for themselves based on the evidence presented, without having to rely on an expert.

---

[3] Despite his opinions in his Initial Report about which elements of the marks stand out [Initial Report ¶¶ 29-31], Isaacson testified during his deposition that he did not know which elements of the marks consumers would see and which elements stand out.  [Isaacson Depo. 82:11-83:19]  Despite opining on how consumers refer to JIPC in his Sur-Rebuttal, Isaacson testified that "different consumers will refer to the restaurant differently."  [Id. at 106:8-9]

[4] Notably, Isaacson's reports focus solely on the similarities between JIPC and IPC, even though he recognized in his deposition that there are numerous differences that may lessen the likelihood of confusion, including the location of the parties' target markets, the service of alcohol by JIPC but not IPC, and even elements of the parties' respective marks.  [See, e.g. Isaacson Deposition 181:5-193:18]

[5] After submitting his Initial Report, Isaacson visited only one JIPC location and has never visited a single IPC location.  [Isaacson Deposition 99:7-20; 103:18-20]

[6] As outlined below, aside from these lay observations about facts, the rest of Isaacson's Initial Report consists of speculation based on his application of theories and principles from other authors for which Isaacson himself is not qualified to testify.

**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING**

It is clear that Isaacson's testimony at trial would not only be unhelpful to a jury because he doesn't understand the facts here, and his analysis is admittedly based on sheer speculation, rather than testing or scientific methods.  For example, Isaacson relies on the following similarity as a basis for his opinion about the possibility of confusion: JIPC and IPC "[b]oth have slogans that invoke both food and fun; JIPC uses the slogan "All You Can Eat Food & Fun" . . . , while IPC uses "Great Food, Fun, Family & Friends."  [Initial Report ¶ 60]  However, Isaacson omits from his analysis the critical fact that JIPC adopted its "food and fun" slogan well <u>after</u> IPC had adopted its "food and fun" slogan.  Isaacson's testimony regarding possible confusion is rendered materially misleading by his omission of the chronology of adoption of the allegedly similar phrase. If the similarity of the slogans increased the possibility of confusion as Isaacson believes, then JIPC has itself created the situation of likely confusion that it complains of.

As another example of the fundamental flaw in his analysis, Isaacson testified that his "analysis assumes that the consumer has had some sort of encounter with both of the brands."  [Isaacson Depo. at 145:23-25]  Yet, Isaacson then admitted that he never "made any effort to quantify the number of customers or potential customers that have encountered both brands."  [Id. at 146:13-16]  Having provided opinions that are materially affected by omitted facts, and having rested his analysis on assumptions of particular conduct by consumers that he never attempted to test or research, Dr. Isaacson has shown himself to be peculiarly unscientific in his approach. He has demonstrated a willingness to provide both misleading and unsupported conclusions to a jury, if given the opportunity to do so.  Testimony from such a witness would, at best, only confuse the jury in this case.

For these reasons, and given all these fundamental flaws, Isaacson's testimony and reports should be excluded,  because they will not assist the jury in making any determinations on likelihood of confusion, and any probative value will be

**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING**

outweighed by the unfair prejudice and confusion of the issues caused by Isaacson's reports and by any testimony that he intends to provide at trial.  *See* Fed. R. Evid. 403.

### D. Isaacson's conclusions are completely speculative, and in many instances are based on misinformation or no information.

Isaacson's testimony also must be excluded because it is speculative.  An expert opinion must be based on "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.  Rather than drawing any concrete conclusions, Isaacson's analysis is rife with statements that are both speculative and conditional.  Instead of opining about likelihood of confusion today based on actual data, Isaacson only guesses that likelihood of confusion *may* occur if certain events were to take place in the future.

For example, Isaacson offers the following tautological statement: "A customer or potential customer *may* be confused when considering or actually purchasing from JIPC, *if* the customer *incorrectly* believes that JIPC is the same company as, or has an affiliation or connection to IPC."  [Isaacson's Initial Report, ¶ 76]  In fact, a consumer certainly *would* be confused *if* he or she *incorrectly* believes that JIPC is affiliated with IPC, or vice versa.  However, Isaacson provides absolutely no data to support the conclusion that any consumers would have such incorrect beliefs, why such beliefs may arise, and whether any such confused consumers actually exist today.  Thus, Isaacson's statement that confusion *may* occur if a consumer is confused is wholly speculative and unhelpful to a jury.

Any possible utility of Isaacson's Initial Report is overwhelmed by its speculative and conditional opinions.  For example, he writes at great length about what consumers "could believe" [¶¶ 3, 12, 52, 54], "*may* infer" [¶ 27], "*might* infer" [¶ 27], "*might* assume" [¶ 27], or "*might* see" [¶ 74].  He also speculates about how consumers "*may* be confused"  and how "confusion . . . *may* arise" [¶ 45].  He further opines about how the word "incredible" "*can* be read" or "*can* be perceived" [¶ 61], how certain elements "*may* increase the likelihood of confusion" [¶ 76], how JIPC's brand equity "*could* be determined" [¶ 76], and how "consumer perception [of JIPC] *may* be tied to

**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING**

and influenced by marketing activities of IPC" [¶ 79] (emphases added).   These statements underscore that Isaacson has no actual basis to make any assertions in this case, and they do nothing to assist jurors in determining whether consumers are likely to be confused because these statements at best constitute Isaacson's personal opinion about what *might* happen.  *See Inc. Pub. Corp. v. Manhattan Magazine, Inc.*, 616 F. Supp. 370, 393 (S.D.N.Y. 1985) ("'Might,' on the scale of probabilities, occupies a low station. 'Might' suggests what is possible, not what is probable or likely.").

Isaacson's speculation about what consumers would see or believe if they drove by IPC's or JIPC's restaurants illustrates how his poor methods undermine his reports. Isaacson admits that he has never once driven by any IPC restaurant, and he had no idea prior to his deposition about what the IPC storefronts look like.  [Isaacson Deposition 103:18-20]  Yet, in his report, he opined about what "a consumer driving by either [JIPC or IPC's] locations might see" and decide to do.  [Initial Report ¶ 74]  This goes beyond mere speculation and borders on recklessness.

For these reasons, Isaacson's report is based on pure speculation, and should be excluded by the Court.  [*See also* Rebuttal Expert Report of Dr. Itamar Simonson ("Simonson Report"), April 23, 2009, at ¶¶ 11-12 attached as Exhibit 4]

**E.     Isaacson lacks the necessary knowledge and experience to testify as an expert on the issues for which he is offered.**

There is a direct relationship between the flaws in his reports, as outlined above, and Dr. Isaacson's background.  Isaacson's pronounced lack of qualifications to render the particular expert opinions that he offers contributed to and caused all the flaws noted above.  As a result, not only should his reports be excluded, but Isaacson should be precluded entirely from testifying here at trial due to his lack of credentials.

Not being an expert in consumer psychology and behavior, Isaacson lacks the necessary knowledge and experience to testify as an expert on the very issues related to consumer behavior and consumer psychology that he intends to testify about. Under Rule 702, an expert must be "qualified as an expert by knowledge, skill,

1 experience, training, or education."  The "opinion must be an ***expert*** opinion (that is,

2 an opinion informed by the witness' expertise) rather than simply an opinion broached

3 by a purported expert."  *Jones v. Lincoln Elec. Co.*, 188 F.3d 709 (7th Cir. 1999)

4 (emphasis added).  If there was any room for doubt, because Dr. Isaacson is a learned

5 and well educated man, about whether or not Dr. Isaacson's had the qualifications or

6 lacked the qualifications to render the particular expert opinions here, there is simply

7 no room for doubt now.  After examining those reports and learning at his deposition

8 what he intends to testify about, if permitted to do so by this Court, the answer is

9 unequivocal: Dr. Isaacson is not qualified to render these particular opinions.

10       Numerous courts have excluded expert testimony because the expert lacks the

11 necessary qualifications to testify about the issues for which he or she is offered.  *See,*

12 *e.g.*, *Jinro Am., Inc. v. Secure Invs., Inc.*, 2001 U.S. App. LEXIS 25987 at *32-35 (9th

13 Cir. 2001) (concluding that trial court erred in admitting testimony of purported expert

14 who may have qualified as an expert in other areas but whose qualifications were

15 "glaringly inadequate" in the area for which the expert was offered); *United States v.*

16 *Miller*, 874 F.2d 1255, 1268 (9th Cir. 1989) (concluding that expert was unqualified to

17 testify about KGB recruitment practices because he "lacked significant practical

18 experience in the field and had not made any special study of the subject.").

19       As noted in Dr. Simonson's Rebuttal Report, Isaacson is not an expert in consumer

20 psychology and behavior, even though he purports to offer opinions on those subjects in

21 his Initial Report.  [See Simonson Rebuttal, ¶¶ 16-17]  Isaacson received no formal

22 education in this specific area, and instead he asserts that he is qualified as an expert

23 based on his degrees from the Harvard Business School, his professional experience in

24 the marketing field, and his status as President of a marketing research firm.  [*See* Id.]

25 Rather than drawing on his own education or experience, however, Isaacson merely relies

26 on scholarly articles on these subjects to make his conclusions.  As Dr. Simonson

27 correctly observes, "[o]ne cannot become an expert in consumer psychology by reading a

28 few articles/books in the context of preparing an expert report."  [Id. ¶ 17]  For example,

**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING**

1   Isaacson cites a study relevant to what is known as "eye tracking technology," but
2   Isaacson admits that he personally has never "conducted any research using eye-tracking
3   technology." [Initial Report, ¶¶ 28-29; Isaacson Deposition 153:22-155:20] Also, the
4   articles cited by Isaacson often do not support his own contentions or directly contradict
5   opinions made by Isaacson in another case. [Simonson Rebuttal ¶¶ 17, 20, 21, 23-24]

6       Isaacson also relies heavily on the fact that he is "the president of a firm that
7   provides marketing consulting, consumer surveys, and other marketing research for
8   clients" to support his qualifications. [Isaacson Sur-Rebuttal ¶ 14-15] But neither
9   Isaacson nor his firm provided any "marketing consulting, consumer surveys, or
10  marketing research" in this case, and therefore his reports and testimony are not based
11  on his area of expertise. Also, as Dr. Simonson correctly points out, "one does not
12  become an expert on market/consumer research simply by acquiring a
13  marketing/consumer research firm." [Simonson Rebuttal, ¶ 17] Isaacson has
14  published only one article on consumer surveys in intellectual property cases (which
15  he did not conduct in this case), and no articles in the area of consumer behavior and
16  psychology, which are the subjects on which he opines. [Id.] For these reasons,
17  Isaacson is not qualified to testify as to what he expects consumers would do in this
18  case, particularly because he has no data to support his conclusions. Thus, the Court
19  should exclude Isaacson's reports and intended testimony in their entirety.

20      **F.    Isaacson's Sur-Rebuttal is untimely, improper, and inadmissible.**

21      Dr. Isaacson submitted a remarkable supplemental report on May 15, 2009,
22  which was essentially a Sur-Rebuttal (and is referred to herein as such). This Sur-
23  Rebuttal was untimely and such a report was not provided for in the rules or in the
24  scheduling order of this Court.   The Sur-Rebuttal was a redo in large part of the
25  initial report submitted timely on April 10, 2009 by Dr. Isaacson.   Isaacson's Sur-
26  Rebuttal was provided only after Defendants had prepared and timely submitted on
27  April 24, 2009 their Rebuttal Report to Dr. Isaacson's initial report. In fact, the

**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS
AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING**

1   Isaacson Sur-Rebuttal was provided *more than a month after the deadline for*
2   *submitting expert reports had passed on April 10.*

3   Dr. Isaacson named his supplemental report a response to the rebuttal expert report of
4   Dr. Itamar Simonson" .  While some parts of the Sur-Rebuttal indeed responded to Dr.
5   Simonson's report,   Dr. Isaacson compounded the problems of the uncalled for and
6   untimely response by improperly adding a brand new analysis, by introducing new
7   articles and by raising new issues not found in Dr. Isaacson's  initial report.   For all of
8   these reasons Dr. Isaacson's Sur-Rebuttal should be excluded.

9   ###      G.      **Isaacson's methodology in his Sur-Rebuttal does not follow generally
10  accepted principles and does not support his conclusions.**

11  Isaacson's Sur-Rebuttal not only is untimely and uncalled for in the rules and in
12  the scheduling order, but also is inadmissible on additional grounds. It relies heavily
13  for its new analysis on "comment cards" and emails collected by JIPC, suggesting that
14  these comment cards and emails somehow constitute a proper consumer survey[7] on
15  the issue of likelihood of confusion.[8]  Isaacson's "analysis" of comments cards and
16  emails does not qualify as admissible survey evidence under any "reliable principles
17  and methods." *Daubert*, 509 U.S. at 597, 113 S. Ct. at 2796.  Courts often have
18  rejected purported surveys based on the failure to conduct the survey or study in a
19  manner that comports with generally accepted survey principles.  *See, e.g.*, *M2*
20  *Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1087 (9th Cir. 2005) (affirming

---

22  [7] Isaacson himself referred to his "analysis" as "survey research" during his
23  deposition on May 27, 2009 [Isaacson Deposition 10:20-24].  He later admitted,
24  however, that he conducted no survey in this case.  [Id. at 148:24-25 ("Nor did I
conduct a survey in this case.")]

25  [8] Isaacson initially states in his Sur-Rebuttal that he conducted a "detailed
26  analysis" of comment cards, emails, and online customer reviews "[t]o better
27  understand how consumers refer to JIPC and IPC."  [Isaacson Sur-Rebuttal, ¶ 46]
However, Isaacson later purports to offer this as evidence of likelihood of confusion,
28  not merely to show how each mark is perceived separately.  [Id. ¶ 57]

**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS
AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING**

1   district court's rejection of survey because (1) the creator of the survey did not qualify

2   as an expert in designing or analyzing consumer surveys; and (2) the survey was not

3   conducted in accordance with generally accepted survey principles).

4        Isaacson's "analysis" is deficient for additional reasons.  First, while Isaacson

5   admitted that he had conducted no survey, in order to try to correct this perceived

6   deficiency, he attempted a passive review of thousands of comment cards and emails

7   provided to him by JIPC as well as a few online restaurant reviews during May 2009.

8   Merely reading and attempting to interpret the significance, if any, of random comments

9   does not a survey make.

10       Second, all of the comments and emails are from persons commenting or inquiring

11  specifically about JIPC, not IPC.  "It is well-settled . . . that the universe of the survey

12  must include potential purchasers of the junior user's product."  *See Hutchinson v.*

13  *Essence Commun's, Inc.*, 769 F. Supp. 541, 559-60 (S.D.N.Y. 1991).  Therefore, these

14  comments and inquiries are not relevant to the issue of likelihood of confusion between

15  both parties.  Thus, the narrow scope of the study (*i.e.* consumers and others affiliated

16  with or inquiring about JIPC) makes the study improper and therefore inadmissible.

17       Third, a consumer's comments during or immediately after (1) visiting a John's

18  location or (2) accessing JIPC's website (both of which prominently bear the John's

19  Marks) cannot be used to establish a likelihood of confusion, or even to show how

20  consumers perceive the John's Marks.  Consumers' reactions in situations where the

21  consumer "could see, or had just seen, the goods or labels in questions" are unreliable, as

22  are surveys conducted with consumers "who had just purchased the plaintiff's product."

23  MCCARTHY ON TRADEMARKS § 32:171; *see also Aerojet-General Corp. v. Cincinnati*

24  *Screen Process Supplies, Inc.*, 172 U.S.P.Q. 114 (S.D. Ohio 1971) (the issue is confusion

25  before purchase, not after purchase); *Marcalus Mfg. Co. v. Watson*, 156 F. Supp. 161

26  (D.C. Cir. 1958) (rejecting survey where interviewees at a supermarket could see

27  plaintiff's mark just prior to or during the survey).  Therefore, even if Isaacson's

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING**

"analysis" of these comment cards and emails could be deemed a "survey" or "marketing research," which it cannot, it still lacks any meaningful methodology and is improper.

Fourth, Isaacson's reliance on the comment cards and emails cannot substitute for a likelihood of confusion survey because there is no evidence that the people who submitted comments or emails to JIPC ever saw the IPC Mark or had ever hear of IPC.  This is inconsistent with Isaacson's claim during his deposition that "[his] analysis assumes that the consumer has had some sort of encounter with both of the brands."  [Isaacson Deposition 145:24-24]  In fact, Isaacson also admitted that he had not made any effort to quantify the number of customers or potential customers that have encountered both brands.  [Id. at 146:12-16]  Isaacson's opinions regarding likelihood of confusion based on these comment cards and emails is thus unreliable and entirely speculative—there is no evidence that any of the people submitting comment cards or emails knew about or saw both marks.  Thus, Isaacson's "analysis" is inconsistent with his own assumptions.

Fifth, Isaacson improperly relies on comment cards on which the word "incredible" is printed repeatedly, in an attempt to show that consumers somehow relate the word "incredible" to JIPC because they wrote the word "incredible" on the comment cards.[9]  [Rebuttal Report ¶ 53]  "Surveys which do nothing more than demonstrate the respondents' ability to read are not probative on the issue of likelihood of confusion." *Franklin Resources, Inc. v. Franklin Credit Mgmt. Corp.*, 988 F. Supp. 322, 335 (S.D.N.Y. 1997); *see also Starter Corp. v. Converse, Inc.*, 170 F.3d 286 (2d Cir. 1999) (rejecting survey as "little more than a memory test").  Thus, Isaacson's reliance on these comment cards to show affiliation in consumers' minds between JIPC and the word "incredible" is of no substantive value.

---

[9] For example, on both sides of the comment cards, consumers are asked to rate the quality of JIPC's food, services, cleanliness and more on an artificial scale ranging from "incredible" to "good" to "fair" to "poor."

DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS
AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING

1        Sixth, "[t]reating inconclusive responses as definite, unqualified responses in

2   final survey tabulations" also makes a purported survey unreliable. MCCARTHY ON

3   TRADEMARKS § 32:171; *see, e.g.*, *General Motors Corp. v. Cadillac Marine & Boat*

4   *Co.,* 226 F. Supp. 716, 738 (W.D. Mich. 1964) (rejecting survey where "the answers

5   are indefinite; all of them evidence little care or consideration"). Isaacson's Sur-

6   Rebuttal study gathers off-hand statements on comment cards and in emails to make

7   improper inferences about how consumers perceive the John's Marks and whether

8   they are likely to be confused. For example, after reviewing the various references to

9   JIPC ("John's," "John's Incredible Pizza," "JIPC," etc.) and IPC ("Incredible Pizza

10  Company," "Tulsa's Incredible Pizza Company", etc.), Isaacson asserts that "[t]he

11  data *imply* that another chain sharing the "Incredible Pizza Company" part of their

12  name *and operating in the same market* as JIPC *would be* confusing for consumers . .

13  . ." [¶ 57 (emphasis added)] However, Isaacson offers no evidence or even argument

14  for this leap in logic. In fact, Isaacson offers no relevant data *at all* for this

15  conclusion. Likewise, Isaacson's failure to conduct a proper survey to check the

16  accuracy and validity of consumers' responses and comments strongly supports

17  excluding his Sur-Rebuttal. *See Sheller-Globe Corp. v. Scott Paper Co.*, 204 U.S.P.Q.

18  329 (T.T.A.B. 1979) (according no weight to survey because of failure to check on

19  accuracy and validity of responses). Because Isaacson's "analysis" does nothing more

20  than compile alleged references to JIPC and IPC by unknown persons, it is not

21  admissible to establish a likelihood of confusion among consumers.

22       Based on Isaacson's failure to produce or rely on any reliable survey data, his lack

23  of any proper methodology (or rather no methodology) to analyze references to JIPC and

24  IPC, and his use of inconclusive statements to make improper inferences and

25  conclusions, the opinions offered in his Sur-Rebuttal would serve only to cause unfair

26  prejudice and to confuse the jury. *See* Fed. R. Evid. 403. Thus, the Court should exclude

27  any of the opinions, testimony or analysis set forth in Isaacson's Sur-Rebuttal.

28

DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS
AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING

## III.    Conclusion

Even if Isaacson were qualified to provide the opinions he renders, Isaacson's testimony and reports would not assist the jury in determining whether IPC's use of its mark is likely to cause confusion with JIPC's use of the John's Marks.  Isaacson's Initial Report merely makes subjective observations about the parties and the uses of their respective marks, observations that a jury can and should make on its own. Isaacson merely speculates as to what consumers "might" believe or whether there "might" be confusion.  Isaacson never conducted a proper consumer survey or any other proper marketing research to gauge in a scientific manner the alleged likelihood of confusion, the strength of the John's Marks, or anything else.

Isaacson's untimely Sur-Rebuttal does nothing to correct these fatal flaws, and instead improperly attempts to introduce new theories and a flawed non-survey "analysis" which, as demonstrated above, is entirely speculative and not probative of the issue of likelihood of confusion.  Based on the foregoing, Defendants respectfully request that this Court exclude Isaacson's testimony and his reports in their entirety pursuant to Rules 701, 702, and 403 of the Federal Rules of Evidence.

Dated: June 22, 2009          By:  *s/Steven C. Lawrence*

Blaine J. Benard
Lawrence P. Ebiner
800 W. Olympic Blvd., 4th Floor
Los Angeles, CA  90015
Telephone:  (213) 572-4300
Facsimile: (213) 572-4400

Glenn S. Bacal
Steven C. Lawrence
Promenade Corporate Center
16427 North Scottsdale Road, Suite 300
Scottsdale, AZ 85254-1597
Telephone:  (480) 624-4500
Facsimile: (480) 624-4599

Attorneys for Incredible Pizza Co., Inc. and
Incredible Pizza Franchise Group, LLC;

## PROOF OF SERVICE

### 1013 A(3) CCP REVISED 5/1/88

STATE OF ARIZONA, COUNTY OF MARICOPA

I am employed in the County of Maricopa, State of Arizona. I am over the age of 18 and not a party to the within action. My business address is 16427 North Scottsdale Road, Suite 300, Scottsdale, Arizona 85254.

On June 22, 2009, I served the foregoing document described as **DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING** on the interested party in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

**SEE ATTACHED SERVICE LIST**

☒　　BY MAIL: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐　　BY PERSONAL SERVICE: I caused the above-mentioned document to be personally served to the offices of the addressee.

☐　　BY FACSIMILE: I communicated such document via facsimile to the addressee as indicated on the attached service list.

☐　　BY FEDERAL EXPRESS: I caused said document to be sent via Federal Express to the addressee as indicated on the attached service list

☐　　BY ELECTRONIC MAIL: I caused the above-referenced document to be served to the addressee on the attached service list.

Executed on June 22, 2009, at Scottsdale, Arizona.

X　　(FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____
Jamie Tuccio

1

**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING**

1

2

## SERVICE LIST

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VIA E-MAIL**
Ronald Oines, Esq.
Rutan & Tucker, LLP
611 Anton Boulevard, Suite 1400
Costa Mesa, CA  92626-1931
roines@rutan.com
Telephone:  (714) 641-5100
Facsimile:  (714) 546-9035

**VIA E-MAIL**
Randolph C. Foster, Esq.
Steven E. Klein, Esq.
Stoel Rives LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR  97204
rcfoster@stoel.com
seklein@stoel.com
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

*Attorneys for JIPC MANAGEMENT, INC.*

*Attorneys for JIPC MANAGEMENT, INC.*

**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF DR. BRUCE R. ISAACSON, AND TO PRECLUDE HIM FROM TESTIFYING**