RONALD OINES (SBN #145016)
roines@rutan.com
RUTAN & TUCKER, LLC
611 Anton Boulevard, Suite 1400
Costa Mesa, CA 92626-1931
Telephone: (714) 641-5100
Facsimile: (714) 546-9035

RANDOLPH C. FOSTER (OSB #784340)
rcfoster@stoel.com
(*pro hac vice*)
STEVEN E. KLEIN (OSB #051165)
seklein@stoel.com
(*pro hac vice*)
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

EDWARD C. DUCKERS (SBN# 242113)
ecduckers@stoel.com
STOEL RIVES LLP
555 Montgomery St #1288
San Francisco, CA 94111
Telephone: (415) 617-8900
Facsimile: (415) 617-8907

Attorneys for Plaintiff
JIPC Management, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIPC MANAGEMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> INCREDIBLE PIZZA CO., INC.; INCREDIBLE PIZZA FRANCHISE GROUP, LLC; CJM RACING, LLC., <br><br> Defendants. | Case No. CV08-4310 MMM(PLAx) <br><br> **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE [TO EXCLUDE EVIDENCE AND ARGUMENT RE ALLEGED SCHEME BY PLAINTIFF TO MANUFACTURE BACKDATED DOCUMENTS]** <br><br> **DATE:** July 13, 2009 <br> **TIME:** 10:00 a.m. <br> **CTRM:** 780 |

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION IN LIMINE

Portlnd2-4766091.2 0061355-00004

## I. INTRODUCTION

Consistent with Local Rule 16 and the pretrial scheduling order entered in this cause, plaintiff JIPC Management, Inc. ("JIPC") offers the following in support of its Motion in Limine.

JIPC's Motion in Limine is in two parts. First, JIPC asks this Court to preclude Defendants Incredible Pizza Co., Inc. and Incredible Pizza Franchise Group, LLC (collectively, "IPC") from asserting arguments regarding an alleged scheme by JIPC and its counsel to "manufacture" purportedly "backdated" documents regarding JIPC's licensing of the mark "Incredible Pizza Co.," for lack of relevance under Federal Rule of Evidence 402 and for unfair prejudice and related grounds under Federal Rule of Evidence 403.

Second, should the Court find that JIPC's use of license agreements that, in addition to reflecting dates of execution, provide retroactive consent to use the licensed marks, *nunc pro tunc*, as of an earlier effective date, is somehow relevant to IPC's defenses or counterclaims, JIPC asks this Court to nevertheless preclude IPC under Federal Rule of Evidence 403 from referring to such agreements as "backdated."

## II. ARGUMENT

### A. The Court Should Preclude IPC From Introducing Evidence of An Alleged Scheme By JIPC to Manufacture Documents or Rewrite Its Trademark History.

On June 8, 2009, the Court provided tentative rulings on the parties' respective motions for summary judgment. On JIPC's motion, the Court indicated that it was inclined to grant summary judgment finding that JIPC's predecessor-in-interest, John's Incredible Pizza Co., Inc., had assigned its trademark rights in "John's Incredible Pizza Co." to JIPC and that JIPC has standing to asserted those rights for purposes of trial. On IPC's motion, the Court indicated that it was inclined to grant summary judgment finding that JIPC did not have standing to assert trademark rights in "Incredible Pizza Co." separate and apart from its rights

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

JIPC MANAGEMENT, INC'S MEMORANDUM IN
SUPPORT OF MOTION IN LIMINE

1

Portlnd2-4766091.2 0061355-00004

in "John's Incredible Pizza Co."  Should the Court enter orders adopting its tentative rulings, trial will proceed only on JIPC's claims for infringement of its "John's Incredible Pizza Co." marks, and IPC's defenses thereto.  The question of JIPC's ownership of and right to assert the "Incredible Pizza Co." mark will not be presented to the jury.

Notwithstanding the Court's indication of its likely disposition of these issues, counsel for IPC has represented that IPC still intends to raise at trial its arguments that JIPC manufactured "backdated" documents licensing the mark "Incredible Pizza Co." in an effort to rewrite the "historical record" regarding its ownership of the "Incredible Pizza Co." mark.  IPC contends that its arguments are relevant to its "unclean hands" defense to JIPC's claims for infringement of its "John's Incredible Pizza Co." marks.

The question is thus presented:  Is evidence of an alleged scheme by JIPC to fraudulently manufacture a "chain of title" to the one mark, "Incredible Pizza Co.," relevant to a dispute regarding the different mark "John's Incredible Pizza Co." and admissible in evidence?

The starting point for this discussion is Federal Rule of Evidence 402, which states, "All relevant evidence is admissible . . . Evidence which is not relevant is not admissible."  The provisions of FRE 402 are further prescribed in FRE 403:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.

In the present case, IPC takes the stance that JIPC conceived of a scheme to "manufacture" agreements that licensed the "Incredible Pizza Co." mark, among others, both prospectively from the execution date of the document, as well as retroactively, *nunc pro tunc,* from an effective date that coincides with the

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

JIPC MANAGEMENT, INC'S MEMORANDUM IN
SUPPORT OF MOTION IN LIMINE

Portlnd2-4766091.2 0061355-00004

2

licensee's first operation of a JIPC store, in an improper effort to claim ownership and priority in the "Incredible Pizza Co." mark. (*See*, e.g., Doc. 152 at 18-20.) There is no evidence in support of this proposition. Instead, there are only the assertions of IPC's counsel. Even if IPC could proffer competent evidence of a bad faith scheme by JIPC to manufacture evidence that it owns the mark "Incredible Pizza Co.," such a scheme has no relevance to the issues to be tried to the jury— whether IPC infringes the "John's Incredible Pizza Co." marks. Moreover, any arguable relevance such an alleged scheme might have is far outweighed by the danger of unfair prejudice and confusion of the issues.

### 1. JIPC's Alleged Scheme to Manufacture Title to "Incredible Pizza Co." Is Not Relevant.

Trademark law's unclean hands defense springs from the rationale that "it is essential that the plaintiff should not in his trade mark, or in his advertisements and business, be himself guilty of any false or misleading representation." *Japan Telecom, Inc. v. Japan Telecom America, Inc.*, 287 F.3d 866, 870 (9th Cir. 2002) (*quoting Worden v. Cal. Fig Syrup Co.*, 187 U.S. 516, 528 (1903)).

To make out an unclean hands defense, a trademark defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the trademark that is the subject matter of the plaintiff's claims. *Id.* (*citing Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987); *UT Lighthouse Ministry, Inc. v. Discovery Computing, Inc.*, Case No. 05cv380, 2005 WL 3263157, *8 (D. Utah Dec. 1, 2005) ("Courts have held that the doctrine of unclean hands would prevent enforcement of a trademark only if a plaintiff's wrongdoing was related to the trademark that the plaintiff was attempting to enforce.") To establish that a plaintiff's conduct is inequitable, a defendant "must show that plaintiff used the trademark to deceive consumers. *Japan Telecom*, 287 F.3d at 870; *see also R. J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, Case No. 99C1174, 2001 WL 747422, *2-3 (N.D. Ill. June 29, 2001) ("courts have

Stoel Rives LLP
Attorneys At Law
Portland

JIPC MANAGEMENT, INC'S MEMORANDUM IN
SUPPORT OF MOTION IN LIMINE

3

Portlnd2-4766091.2 0061355-00004

almost unanimously required a party seeking to use the unclean hands defense to demonstrate that the trademark itself, as opposed to advertising or promotion of the trademarked product, was deceptive.")

Here, IPC cannot show that that JIPC's conduct in entering into license agreements that, among other things, covered the mark "Incredible Pizza Co." is either inequitable or relates to the subject matter of JIPC's claims.

IPC claims that JIPC's use of *nunc pro tunc* provisions in its license agreements constitutes fraudulent "backdating" akin to forging the execution date of an agreement. But IPC has never come forward with a single legal citation to support this contention, which is refuted by the agreements themselves, each of which contains a separate execution date, making it obvious that the *nunc pro tunc* effective date does not purport to be the execution date. (Doc. 154, Exs. E-L.)

Nor has IPC proffered any evidence that JICP's claim of rights in the mark "Incredible Pizza Co." was not warranted by existing law or lacked evidentiary support. All IPC has asserted is that JIPC has never used the phrase INCREDIBLE PIZZA CO. alone and (2) the specimens JIPC submitted to the Trademark Office in support of its two applications to register INCREDIBLE PIZZA CO. alone display "the entire JOHN'S INCREDIBLE PIZZA CO. composite mark." (Doc. 116 at 27-28.) But these facts are immaterial.

Under the applicable law, the fact that material sought to be protected always appears as one element of a multi-element composite mark does not disqualify the owner from claiming rights in the element alone. *See Application of Servel Inc.*, 181 F.2d 192, 195 (C.C.P.A. 1950) ("courts in a proper case may recognize the right to registration of one part of an owner's mark consisting of two parts"); *In re Royal Bodycare, Inc.*, 83 U.S.P.Q.2d 1564, 2007 WL 616034, *2-3 (T.T.A.B. 2007) ("The mere fact that two or more elements form a composite mark does not necessarily mean that those elements are inseparable for registration purposes. An applicant may apply to register any element of a composite mark used or intended

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

JIPC MANAGEMENT, INC'S MEMORANDUM IN
SUPPORT OF MOTION IN LIMINE

4

Portlnd2-4766091.2 0061355-00004

1    to be used if that element presents, or will present, a separate and distinct
2    commercial impression apart from any other matter with which the mark is or will
3    be used on the specimen.") (quoting TMEP § 807.14(b).)

4        Rather, as the Court has recognized, to determine whether one element of a
5    composite mark is entitled to protection standing alone, courts look to whether the
6    matter sought to be protected creates a commercial impression separate from the
7    larger context in which it is presented. *See In re Big Pig*, 81 U.S.P.Q.2d 1436
8    (T.T.A.B. 2006) (finding that "the word PSYCHO creates a separate and distinct
9    commercial impression which indicates the source of applicant's goods apart from
10   the remaining words and design elements."). And even where the elements are in
11   close proximity or connected, they may still be found to create a separate
12   commercial impression. *See, e.g., In re Royal Bodycare, Inc.*, 2007 WL 616034, at
13   *2-3 (citing cases).

14       Indeed, IPC's contention that JIPC's submission of a specimen showing the
15   JOHN'S INCREDIBLE PIZZA CO. (and Design) mark in support of its two
16   applications to register "Incredible Pizza Co." is evidence of unclean hands makes
17   no sense. Under the Lanham Act, the mark applied for must be a "complete" mark,
18   as evidenced by the specimen. *See* Trademark Manual of Examining Procedure §
19   807.12(d) ("Mutilation or Incomplete Representation of Mark"). Where there is
20   essential and integral subject matter shown in the specimen that is missing from the
21   drawing, a refusal will issue. *Id.* As stated above, the determinative factor "is
22   whether or not the subject matter in question makes a separate and distinct
23   commercial impression apart from the other element(s)." *Id.*

24       If there was no good faith argument that "Incredible Pizza Co." presented a
25   separate and distinct commercial impression from the other elements of the
26   composite mark shown in the specimens, JIPC's two applications to register the
27   mark would have been refused on this ground. But neither was. (*See* Doc. 127,
28   Ex. 2 at 62-64, 70-74.) Rather, the two different examiners who reviewed the

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

JIPC MANAGEMENT, INC'S MEMORANDUM IN
SUPPORT OF MOTION IN LIMINE

5

Portlnd2-4766091.2 0061355-00004

applications both issued refusals based on a likelihood of confusion with IPC's INCREDIBLE PIZZA COMPANY GREAT FOOD, FUN, FAMILY, & FRIENDS (and design) mark, without questioning the completeness of the applied-for mark.

In short, IPC has failed to muster any evidence that JIPC sought to "manufacture" title in "Incredible Pizza Co." let alone evidence sufficient to assert "unclean hands." Even if IPC had come forward with evidence that JIPC sought to "manufacture" title in the "Incredible Pizza Co." mark, JIPC's alleged conduct would be at best collateral to JIPC's cause of action for infringement of the "John's Incredible Pizza Co." marks. *See, e.g., R&R Partners, Inc. v. Tovar*, 447 F. Supp. 2d 1141, (D. Nev. 2006); *R.J. Reynolds Tobacco*, 2001 WL 747422 at *3 (N.D. Ill. 2001) (finding any deception inherent in the packaging or trade dress of the product sold under the trademark was collateral to claims for infringement of the mark itself and could not support unclean hands defense); *Inmuno Vital, Inc. v. Golden Sun, Inc.*, 49 F. Supp. 2d 1344 (S.D. Fla 1997) (dismissing unclear hands defense where "the trademark at issue here is VIDA VITAL, not 'CANCER CURE,' and therefore the alleged illegality is not related to the trademark at issue.")

IPC has also alternately suggested that JIPC allegedly "backdated" license agreements in an effort to counter arguments that "it had engaged in naked licensing" with "other Parlet-controlled entities." (Doc. 152 at 1.) Again, IPC's contentions make little sense. "Naked licensing" occurs only where the owner licenses use of the mark for a significant period without "adequate control" over the quality of the goods and services sold by the licensee under the mark. *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc*., 289 F.3d 589, 595-96 (9th Cir. 2002) (*citing Moore Bus. Forms, Inc. v. Ryu*, 960 F.2d 486, 489 (5th Cir. 1992).) To prevail on a naked licensing theory, a defendant must satisfy a stringent burden of proof and show that through the absence of quality control, the mark has lost *all* significance as a trademark. *See Id.*; *Exxon Corp. v. Oxxford Clothes, Inc.,* 109 F.3d 1070, 1075, 1079-80 (7th Cir. 1997).

1    Here, it is undisputed that JIPC has exercised control over the operation and
2 quality of all JIPC licensed stores through its continuous management of each store
3 from the date the store opened to the present, under agreements with the entities
4 that own the stores.  (Doc. 12, ¶¶ 14-20.)  Moreover, as IPC's own reference to the
5 licensees as "Parlet-controlled" implies, John Parlet, JIPC's founder, owner and
6 president has, with one exception, continuously controlled each of the entities that
7 owns the stores since their formation.[1]  (*Id.*)  IPC has not, and cannot, assert that the
8 JOHN'S INCREDIBLE PIZZA CO. has ceased to function as an indicator of the
9 source of JIPC's goods and services.  Thus, aside from being unsupported, any
10 argument that JIPC improperly "backdated" license agreements for the purposes of
11 avoiding a naked licensing defense is not relevant to any of the claims or defenses
12 in this matter.  *See also* Fed. R. Evid. 407 (evidence of subsequent remedial
13 measures not admissible to prove culpable conduct).

**2.   The Danger of Unfair Prejudice and Confusion of Issues From Allowing IPC to Introduce JIPC's Alleged Scheme to Manufacture Title to "Incredible Pizza Co." Far Outweighs Any Probabative Value.**

Even if evidence of an alleged scheme to manufacture title to the "Incredible Pizza Co." mark had some arguable probative value to an issue to be tried by the jury, it should still be excluded as any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and undue delay.  Fed. R. Evid. 403.  "Unfair prejudice" in this context means "an undue tendency to suggest decision on an improper basis.  *Id.*, Advisory Committee's Notes, 1972 Proposed Rules.  It is reasonable to conclude that evidence of a purported scheme to manufacture title to the "Incredible Pizza Co." mark might improperly influence the

---

[1] The sole exception is John's Incredible Pizza Co., Inc., which Parlet founded and controlled until September 2003, when he transferred ownership and control to his former wife as part of their divorce proceedings.  (Doc. 12, ¶ 17.)  JIPC continues to exercise quality control over the store owned by John's Incredible Pizza Co., Inc. through, among other things, a written management agreement.  (*Id.*)

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

JIPC MANAGEMENT, INC'S MEMORANDUM IN
SUPPORT OF MOTION IN LIMINE

7

Portlnd2-4766091.2 0061355-00004

1  jury to reduce the amount of a damages award or find no liability for infringement
2  of the "John's Incredible Pizza Co." This would be improper, as any such conduct
3  does not diminish JIPC's trademark protection in its "John's Incredible Pizza Co."
4  mark or IPC's liability for infringement.

5        Admission of such evidence could also lead to unneeded delay as pursuit of
6  IPC's theory would could potentially lead to its own trial within a trial on the issue
7  of whether JIPC's conduct with respect to a mark not in issue was proper. *See*
8  *Duran v. City of Maywood*, 221 F.3d 1127,1133 (9th Cir. 2000)

### B. In the Alternative, the Court Should Preclude IPC From Making Reference to "Backdating."

Throughout this dispute, IPC has referred to JIPC's use of *nunc pro tunc* provisions in its license agreements as "backdating," and has characterized the agreements that contain such provisions as "backdated" despite the fact that each clearly identifies the date on which the agreement was executed. IPC's frequent use of the term "backdated" is clearly intended to invoke analogy with improper and potentially illegal practices such as "backdating" checks and stock options.

As IPC's use of the "backdating" is neither accurate nor necessary to the presentation of its case, and appears solely calculated to cause unfair prejudice and confusion of the issues, IPC should be precluded from referring to JIPC's use of *nunc pro tunc* provisions as "backdating" or to JIPC's license agreements as "backdated."

## III. CONCLUSION

For the reasons set forth above, the Court should preclude IPC from asserting arguments regarding an alleged scheme by JIPC and its counsel to "manufacture" purportedly "backdated" documents regarding JIPC's licensing of the mark "Incredible Pizza Co." In the alternative, the Court should preclude IPC from referring to JIPC's use *nunc pro tunc* provisions as "backdating" or to JIPC's license agreements as "backdated."

DATED: June 22, 2009

STOEL RIVES LLP

By: /s/Steven E. Klein
    RANDOLPH C. FOSTER
    EDWARD C. DUCKERS
    STEVEN E. KLEIN

RUTAN & TUCKER, LLP
    RONALD OINES

    Attorneys for Plaintiff
    JIPC Management, Inc.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

JIPC MANAGEMENT, INC'S MEMORANDUM IN
SUPPORT OF MOTION IN LIMINE

9

Portlnd2-4766091.2 0061355-00004