1  RONALD P. OINES (SBN 145016)
   roines@rutan.com
2  RUTAN & TUCKER, LLP
   611 Anton Boulevard, 14th Floor
3  Costa Mesa, California 92626-1931
   Telephone: 714-641-5100
4  Facsimile: 714-546-9035

5  RANDOLPH C. FOSTER (OSB 784340)
   rcfoster@stoel.com
6  (pro hac vice)
   STEVEN E. KLEIN (OSB 051165)
7  seklein@stoel.com
   (pro hac vice)
8  STOEL RIVES LLP
   900 SW Fifth Avenue, Suite 2600
9  Portland, OR 97204
   Telephone: 503-224-3380
10 Facsimile: 503-220-2480

11 EDWARD C. DUCKERS (SBN# 242113)
   ecduckers@stoel.com
12 STOEL RIVES LLP
   555 Montgomery St #1288
13 San Francisco, CA 94111
   Telephone: (415) 617-8900
14 Facsimile: (415) 617-8907

15 Attorneys for Plaintiff
   JIPC Management, Inc.

16

17

18              UNITED STATES DISTRICT COURT

19              CENTRAL DISTRICT OF CALIFORNIA

20 JIPC MANAGEMENT, INC.,          Case No. CV08-4310 MMM (PLAx)

21              Plaintiff,          **PLAINTIFF JIPC
                                    MANAGEMENT, INC.'S OFFER
22      v.                          OF PROOF RE BAD FAITH
                                    INTENT IN ADOPTING IPC
23 INCREDIBLE PIZZA CO., INC.;      MARKS**
   INCREDIBLE PIZZA FRANCHISE
24 GROUP, LLC; CJM RACING, LLC.,    **Hon. Margaret M. Morrow**

25              Defendant.

26

27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

PLAINTIFF JIPC MANAGEMENT, INC.'S
OFFER OF PROOF RE BAD FAITH INTENT

CV08-4310 MMM (PLAX)

Portlnd2-4773842.1 0061355-00004

1    Pursuant to the Court's Minute Order, dated July 14, 2009, addressing

2    Defendants' Motion in Limine No. 8 regarding alleged "bad faith" preceding

3    Plaintiff's claims, JIPC Management, Inc. respectfully submits the following offer

4    of proof regarding bad faith intent in the adoption of Defendants Incredible Pizza

5    Co., Inc. and Incredible Pizza Franchise Group, LLC's marks.[1]

6    **A.    Incredible Pizza Co. (and Design) Mark.**

7    1.    <u>Witness Testimony.</u>

8          a.    Plaintiff will offer John Parlet, Founder and CEO of JIPC

9                Management, Inc., to testify that:

10               (1)    in the late 1980s or early 1990s, Parlet struck up a professional

11                      friendship with Rick Barsness;

12               (2)    at the time Parlet owned pizza restaurants in California;

13               (3)    at the time Barsness was a Mr. Gatti's pizza restaurant

14                      franchisee in Texas;

15               (4)    Parlet and Barsness would talk from time to time about the

16                      family pizza restaurant industry and their businesses;

17               (5)    in or about 1995, Parlet decided to launch a new restaurant and

18                      entertainment venture under the name "John's Incredible Pizza

19                      Co.";

20               (6)    the John's Incredible Pizza Co. name was selected independent

21                      of, and without any input, involvement or discussion with,

22                      Barsness;

23               (7)    after the name was selected, Parlet mentioned his plans for the

24                      John's Incredible Pizza Co. name and concept to Barsness;

25

26    _____

27          [1] Defendants' Motion in Limine only sought to exclude "evidence of bad faith before 2008" and did not challenge the relevance or admissibility of evidence of bad faith from 2008 to the present. Accordingly, JIPC has limited this offer of proof to the pre-2008 evidence of bad faith adoption that JIPC intends to offer.

28

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

PLAINTIFF JIPC MANAGEMENT, INC.'S
OFFER OF PROOF RE BAD FAITH INTENT                    -1-

Portlnd2-4773842.1 0061355-00004

1    (8)    from time to time thereafter, Parlet updated Barsness on the
2           progress of Parlet's plans for the first John's Incredible Pizza
3           Co. in Victorville, CA;

4    (9)    Barsness visited the Victorville store soon after it opened in
5           September 1997;

6    (10)   Barsness would have seen that the Victorville store offered an
7           all-you-can-eat pizza, pasta, salad, and dessert buffet, themed
8           dining rooms, and a large entertainment area with video and
9           redemption games;

10   (11)   Barsness would have seen the use of John's Incredible Pizza Co.
11          on the exterior an throughout the interior of the Victorville store;

12   (12)   Barsness asked Parlet about, and Parlet shared, how well things
13          were going with the Victorville store and the positive financial
14          numbers Parlet was seeing early on;

15   (13)   information Parlet shared with Barsness included revenue
16          numbers the Victorville store was generating, which exceeded
17          $1.1 million in the first three months of operations alone;

18   (14)   from 1997 through 1999, Parlet repeatedly told Barsness about
19          Parlet's plans to expand John's Incredible Pizza Co.;

20   (15)   for example, in 1998, Parlet wrote Barsness about Parlet's plans
21          for:  (a) a second store in Bakersville, CA; (b) incorporating an
22          "Incredible Photo Studio" into the store; and (c) using a mobile
23          ticket booth that "will have John's Incredible Pizza Co. signage
24          very visible" at all times;

25   (16)   in 1999, Barsness asked Parlet if Barsness could purchase some
26          pizza sauce and crust recipes because Barsness planned to
27          terminate his franchise relationship with Mr. Gatti's and open

28

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

PLAINTIFF JIPC MANAGEMENT, INC.'S
OFFER OF PROOF RE BAD FAITH INTENT        -2-        CV08-4310 MMM (PLAX)

Portlnd2-4773842.1 0061355-00004

| | | |
|---|---|---|
| 1 | | his own pizza buffet restaurant and wanted to have some recipes |
| 2 | | that did not originate with Mr. Gatti's; |
| 3 | (17) | Parlet agreed to sell Barsness some recipes, unaware that |
| 4 | | Barsness was planning to use the "Incredible Pizza Co." name in |
| 5 | | connection with his own pizza buffet restaurant; |
| 6 | (18) | in Spring 1999, Barsness sent Larry Abbe, the manager of |
| 7 | | Barsness's Abilene, TX Mr. Gatti's franchise to the Victorville |
| 8 | | store to pick up the recipes; |
| 9 | (19) | Abbe travelled back to the Victorville store with Ron Jones, the |
| 10 | | manager of the Victorville store, after the International Pizza |
| 11 | | Expo show held each Spring in Las Vegas, Nevada; |
| 12 | (20) | Abbe spent four to five days at the Victorville store training on |
| 13 | | John's Incredible Pizza Co. recipes; |
| 14 | (21) | in or about October 1999, Parlet heard a rumor, possibly from |
| 15 | | Wendell Cannon, the vendor who set up the Victorville store's |
| 16 | | game room, that Barsness had plans to open a restaurant in |
| 17 | | Texas using the "Incredible Pizza Co." name; |
| 18 | (22) | Parlet immediately called Barsness and vehemently objected to |
| 19 | | Barsness use of the name; |
| 20 | (23) | Parlet stated that John's Incredible Pizza Co. was his name and |
| 21 | | demanded that Barsness pick his own name; |
| 22 | (24) | Barsness responded by saying "Well, I'm sorry, I didn't think |
| 23 | | you'd mind"; |
| 24 | (25) | Barsness claimed it was too late to change the name because he |
| 25 | | had already purchased signs; |
| 26 | (26) | prior to the call between Parlet and Barsness in or about October |
| 27 | | 1999, Parlet and Barsness had never talked about or discussed |
| 28 | | Barsness's use of the Incredible Pizza Co. name in any form; |

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

PLAINTIFF JIPC MANAGEMENT, INC.'S
OFFER OF PROOF RE BAD FAITH INTENT     -3-     CV08-4310 MMM (PLAX)

Portlnd2-4773842.1 0061355-00004

| | | |
|---|---|---|
| 1 | (27) | in or about early May 2000, Parlet received a call from |
| 2 | | Barsness; |
| 3 | (28) | at the beginning of the call Barsness asked how the third John's |
| 4 | | Incredible Pizza Co. store in Fresno, CA was going; |
| 5 | (29) | later in the call Barsness asked Parlet whether they needed "to |
| 6 | | talk anymore about the name issue"; |
| 7 | (30) | Parlet reiterated that John's Incredible Pizza Co. was his name, |
| 8 | | that Parlet could expand nationwide, and demanded again the |
| 9 | | Barsness pick another name; |
| 10 | (31) | Barsness asked Parlet if Parlet would agree to give Barsness |
| 11 | | some part of the country where Barsness could use the name, |
| 12 | | but Parlet refused; |
| 13 | (32) | Barsness assured Parlet that Barsness was seriously considering |
| 14 | | changing the name; |
| 15 | (33) | Barsness never mentioned to Parlet in either of their telephone |
| 16 | | conversations that Barsness had filed an application to register |
| 17 | | Incredible Pizza Co. as a trademark. |

In further support of its offer of proof, JIPC submits excerpts from the following prior testimony provided by Mr. Parlet:  deposition taken on June 2, 2000 (attached as Exhibit 1); declaration executed July 3, 2008 (attached as Exhibit 2); and declaration executed May 11, 2009 (attached as Exhibit 3).[2]

//
//
//
//

---

[2] In each exhibit, the relevant testimony is indicated with underscoring.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

PLAINTIFF JIPC MANAGEMENT, INC.'S
OFFER OF PROOF RE BAD FAITH INTENT     -4-     CV08-4310 MMM (PLAX)

Portlnd2-4773842.1 0061355-00004

b.    Plaintiff will offer Rick Barsness, Founder and CEO of Incredible Pizza Co., Inc., through excerpts of depositions taken on May 24, 2000 (Attached as <u>Exhibit 4</u>); March 30, 2005 (Attached as <u>Exhibit 5</u>); August 24, 2007 (Attached as <u>Exhibit 6</u>); and November 6, 2007 (Attached as <u>Exhibit 7</u>), to testify that:

(1)    in the 1990s, Barsness was a Mr. Gatti's pizza restaurant franchisee in Texas;

(2)    in the early to mid 1990s Barsness met Parlet;

(3)    Barsness and Parlet developed a professional friendship and they would talk from time to time about the family pizza restaurant business;

(4)    in the mid-1990s, Barsness came to learn that Parlet had plans to open a pizza buffet and entertainment center using the name John's Incredible Pizza Co.

(5)    Barsness understood that the John's Incredible Pizza Co. concept Parlet was developing involved an all-you-can-eat buffet of pizza, salad, pasta, and deserts, as well as a game room and ride component.

(6)    Barsness was aware of Parlet's plans to open the Victorville John's Incredible Pizza Co. store before it opened;

(7)    Barsness visited the Victorville store shortly after it opened;

(8)    when Barsness visited the Victorville store there was a buffet featuring pizza, pasta, salad and dessert, as well as an entertainment center with video, arcade and redemption games;

(9)    in early 1998 Barsness began selling off his Mr. Gatti's franchises and preparing to open his own restaurant;

(10)   by November 1998 Barsness had decided to use Incredible Pizza Co. as the name of his new restaurant;

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

PLAINTIFF JIPC MANAGEMENT, INC.'S
OFFER OF PROOF RE BAD FAITH INTENT          -5-                    CV08-4310 MMM (PLAX)

Portlnd2-4773842.1 0061355-00004

1     (11)   there was no reason why Barsness had to use Incredible Pizza
2            Co. as his brand name and nothing required him use the name;

(11) there was no reason why Barsness had to use Incredible Pizza Co. as his brand name and nothing required him use the name;

(12) Barsness was aware that he could have chosen other names, but never considered any name other than Incredible Pizza Co.;

(13) in October 1998 Barsness began working with a graphic designer on an Incredible Pizza Co. logo;

(14) Barsness purchased John's Incredible Pizza Co. recipes from Parlet because he wanted to have recipes that he could prove came from somewhere other than Mr. Gatti's;

(15) Barsness asked Abbe to travel to the Victorville John's Incredible Pizza Co. to pick up the recipes;

(16) Abbe spent three to four days at the Victorville store and, upon his return, Barsness is sure that he discussed with Abbe what Parlet was doing in the Victorville store;

(17) Barsness's last remaining Mr. Gatti's franchises were in Amarillo, TX;

(18) there were two Amarillo, TX Mr. Gatti's locations, a sit-down restaurant and a take-out and delivery store;

(19) the two Amarillo locations were owned by Barsness and his wife, Cheryl Barsness, through their holding company, RPM Productions, Inc.

(20) the Amarillo franchises were to expire on October 14, 1999;

(21) in Spring 1999, Barsness asked Mr. Gatti's to approve the transfer of the Amarillo franchises to Madison Scott;

(22) in late Summer 1999, Mr. Gatti's refused to approve the transfer to Scott;

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

PLAINTIFF JIPC MANAGEMENT, INC.'S
OFFER OF PROOF RE BAD FAITH INTENT   -6-   CV08-4310 MMM (PLAX)

Portlnd2-4773842.1 0061355-00004

(23) at that point, the Barsnesses made the decision to allow the Amarillo Mr. Gatti's franchises expire and convert the stores to Incredible Pizza Co.;

(24) On September 21, 1999, Barsness filed an application to register Incredible Pizza Co. (and design) with the USPTO for restaurant services;

(25) in his declaration in support of the application, Barsness stated, under penalty of perjury, that to the best of his "knowledge and belief no other person, firm, corporation or association had the right to use the said mark in commerce, either in the identical form or in such near resemblance thereto as may be likely, when applied to the goods of such other person, to cause confusion."

(26) at the time Barsness executed the declaration, he was aware that Parlet was using John's Incredible Pizza Co. and had the right to use the name;

(27) Barsness did not contact Parlet and advise him that Barsness was filing an application to register Incredible Pizza Co. (and design);

(28) around the time Barsness and Scott began discussing the sale of the Amarillo locations to Scott as Incredible Pizza Co., Mr. Gatti's approved the transfer of the Amarillo franchises to Scott;

(29) Barsness claims it was Scott's preference to be an Incredible Pizza Co. rather than a Mr. Gatti's franchise;

(30) it was Barsness's preference that Scott be an Incredible Pizza Co. because Barsness was upset with Mr. Gatti's and didn't want them to get revenue from Scott's stores;

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

PLAINTIFF JIPC MANAGEMENT, INC.'S
OFFER OF PROOF RE BAD FAITH INTENT          -7-          CV08-4310 MMM (PLAX)

Portlnd2-4773842.1 0061355-00004

(31) although Barsness began the process of converting the Amarillo stores from Mr. Gatti's to Incredible Pizza Co., he sold the Amarillo stores to Scott before the process was complete;

(32) As part of the sale of RPM to Scott, Barsness and Scott executed a "Side Letter Agreement" dated October 14, 1999.

(33) in the Side Letter Agreement, Barsness states, "you are aware that someone else is operating under [the Incredible Pizza] name and concept in California and possibly in other places."

(34) the "someone else" operating under that name and concept was a reference to Parlet and the John's Incredible Pizza Co. stores;

(35) in the Side Letter Agreement, Barsness also states, "Specifically in regard to your plans to open the Amarillo pizza restaurant as an Incredible Pizza restaurant, I'm making no guarantees whatsoever in regard to the use of the name 'Incredible Pizza'";

(36) Barsness executed the Side Letter Agreement after Parlet had called Barsness to object to Barsness's plans to use the Incredible Pizza Co. name;

(37) Barsness provided the John's Incredible Pizza Co. recipes he purchased from Parlet to Scott for use in the Amarillo's Incredible Pizza Co. store.

(38) The Amarillo take-out restaurant did not use the Incredible Pizza Co. mark in connection with the sale of goods and services before October 16, 1999;

(39) By May 2000, Barsness believed there were two reasons why he and Parlet were no longer friends, one of which was that Barsness was using a similar name to JOHN'S INCREDIBLE PIZZZA CO. ;

Stoel Rives LLP
Attorneys At Law
Portland

PLAINTIFF JIPC MANAGEMENT, INC.'S
OFFER OF PROOF RE BAD FAITH INTENT

-8-

CV08-4310 MMM (PLAX)

Portlnd2-4773842.1 0061355-00004

| | |
|---|---|
| (40) | on March 23, 2001, Barsness filed a Statement of Use with the USPTO in support of his application to register Incredible Pizza Co. (and design); |
| (41) | in his declaration in support of the Statement of Use, Barsness stated under penalty of perjury that the mark was now in use in commerce; |
| (42) | in his declaration, Barsness also stated that "Three specimens showing the marks as used in commerce are submitted with this statement"; |
| (43) | The specimens attached included stationary and business cards for "Springfield's Incredible Pizza Co.", as well as an architect's rendering of the Springfield store; |
| (44) | The Springfield store was not open at the time Barsness signed his declaration; |
| (45) | the Springfield store did not open until August 2002; |
| (46) | The remaining specimens showed use of the Amarillo's Incredible Pizza Co mark by Scott's Amarillo's Incredible Pizza Co.; |
| (47) | the declaration was prepared by Barsness's lawyers for his signature; |
| (48) | Barsness did not understand the declaration at the time he executed it; |
| (49) | Barsness does not recall reviewing the declaration for accuracy or asking his attorneys what the declaration meant; |
| (50) | Barsness believes he probably just glanced at the document, assumed it was correct and signed it; |

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

PLAINTIFF JIPC MANAGEMENT, INC.'S
OFFER OF PROOF RE BAD FAITH INTENT      -9-      CV08-4310 MMM (PLAX)

Portlnd2-4773842.1 0061355-00004

1       (51)   Barsness does not recall whether at the time he executed his

2              declaration he brought to anyone's attention the fact that the

3              Springfield store was not open.

4

5    c.    Plaintiff will offer Madison Scott, owner of Amarillo's Incredible

6        Pizza Co., Inc., in person and/or through excerpts of depositions taken

7        on November 3, 1999 (Attached as Exhibit 8); December 13, 2001

8        (Attached as Exhibit 9); and April 11, 2005 (Attached as Exhibit 10),

9        to testify that:

10     (1)   in 1999 Scott entered discussions with Barsness to purchase

11            Barsness's Amarillo, Texas Mr. Gatti's franchises;

12     (2)   Scott applied to Mr. Gatti's to be approved as transferee of the

13            Amarillo Mr. Gatti's franchises.

14     (3)   In or about early August 1999, Mr. Gatti's indicated that it

15            would not approve Scott as a transferee;

16     (4)   Scott's discussions with Barsness closed down around August 3,

17            1999;

18     (5)   on October 1, 1999, Rick Barsness called Scott and told him that

19            Mr. Gatti's had reconsidered approving Scott as a franchisee;

20     (6)   Barsness also told Scott that Barsness had his own great concept

21            he had been working on for two years that Scott might want to

22            consider;

23     (7)   after the call Barsness came to town and told Scott that there

24            was something out of California called John's Incredible Pizza

25            Company and Barsness was thinking himself of doing an

26            Incredible Pizza Company;

27

28

Stoel Rives LLP
Attorneys At Law
Portland

PLAINTIFF JIPC MANAGEMENT, INC.'S
OFFER OF PROOF RE BAD FAITH INTENT   -10-        CV08-4310 MMM (PLAX)

Portlnd2-4773842.1 0061355-00004

(8)     Barsness told Scott that he had drawings, architecture, and recipes all ready to go and could transfer the concept over to Scott for $2.7 million;

(9)     Barsness told Scott Barsness had been working with Parlet in California and that John's Incredible Pizza Co. was doing extremely well in California, and had grown to four stores;

(10)    Barsness told Scott that Parlet's sales that were much better than Mr. Gatti's;

(11)    it was Scott's preference to operate the Amarillo locations as a Mr. Gatti's rather than as an Incredible Pizza Co.

(12)    Barsness told Scott that Barsness would not provide financing if Scott operated as a Mr. Gatti's;

(13)    Barsness promised Scott that he would give Scott a delicious pizza recipe and "this great business" from John's Incredible Pizza Co.

(14)    Barsness assured him that he had a great recipe and that Abbe would come up from Abilene to train Scott on the recipe;

(15)    Scott had to make a decision be October 14, 1999, when the Barsness's Mr. Gatti's franchises were set to expire.

(16)    Scott knew Wendell Cannon, a game room vendor who took care of the John's Incredible Pizza Co. game rooms;

(17)    Cannon told Scott that John's Incredible Pizza Co. was a great company, that Parlet did real well, and that it should be a good operation for Scott;

(18)    Scott understood that Barsness's reference in the Side Letter Agreement to someone else operating under the Incredible Pizza name and concept in California meant John's Incredible Pizza Co.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

PLAINTIFF JIPC MANAGEMENT, INC.'S
OFFER OF PROOF RE BAD FAITH INTENT          -11-          CV08-4310 MMM (PLAX)

Portlnd2-4773842.1 0061355-00004

(19)    the first day the delivery store was open to the public under the name Incredible Pizza Co. was October 16, 1999;

(20)    the sit-down store closed for conversion and did not first operate under the name Incredible Pizza Co. under November 2, 1999;

(21)    Scott, not Barsness, paid the costs of converting the Amarillo stores from Mr. Gatti's to Amarillo's Incredible Pizza Co.

(22)    after the Amarillo store opened, Ron Jones, the manager of the Victorville JOHN'S INCEDIBLE PIZZA CO. told Scott on more than one occasion that Parlet objected to Scott's using the name Incredible Pizza Co.

d.    Plaintiff will offer Larry Abbe, President of Incredible Pizza Co., Inc., through excerpts of depositions taken on March 30, 2005 (Attached as <u>Exhibit 11</u>) and  November 6, 2007 (Attached as <u>Exhibit 12</u>), to testify that:

(1)    From 1993 through 1998, Abbe was manager of Barsness's Abilene, Texas Mr. Gatti's franchise;

(2)    sometime in the late 1990s, Abbe received a call from Barsness, who said that he wanted Abbe to go to the Victorville John's Incredible Pizza Co. to pick up recipes;

(3)    Barsness said that if Barsness was going to do a new concept, he needed to have some recipes and that he had purchased recipes from Parlet;

(4)    Abbe was scheduled to go out to the annual pizza show in Las Vegas for three days;

(5)    Abbe met up with Jones, who drove him back to Victorville;

(6)    Abbe spent five to seven days at the Victorville store and gathered the recipes.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

PLAINTIFF JIPC MANAGEMENT, INC.'S
OFFER OF PROOF RE BAD FAITH INTENT
-12-
CV08-4310 MMM (PLAX)

Portlnd2-4773842.1 0061355-00004

1

2          d.     Plaintiff will offer Ron Jones, Manager, Victorville John's Incredible

3                 Pizza, 1998-1999, to testify that:

4                 (1)     in late 1998 or early 1999, Abbe came in to the Victorville store

5                         to learn recipes being used at John's Incredible Pizza Co.

6                 (2)     Abbe spent about a week in Victorville.

7                 In further support of its offer of proof, JIPC submits excerpts from the

8                 following prior testimony provided by Mr. Jones:  deposition taken on

9                 June 2, 2000 (attached as <u>Exhibit 13</u>,  and deposition taken on April 1,

10                2005 (attached as <u>Exhibit 14</u>.)

11

12    2.   <u>Documents</u>

13         a.     Undated Letter from John Parlet to Rick Barsness (attached as <u>Exhibit</u>

14                <u>23</u>), to establish Barsness's knowledge of use of "John's Incredible

15                Pizza Co." mark and plans to expand.

16         b.     Letter from Karen Munger to Rick Barsness, dated October October

17                19, 1998 (see <u>Exhibit 5</u> (attached as deposition exhibit 2 to Barsness

18                testimony)), to establish that development of Incredible Pizza Co. (and

19                design) began in late 1998.

20         c.     Letter from Karen Munger to Rick Barsness, dated November 4, 1998

21                (see <u>Exhibit 5</u> (attached as deposition exhibit 3 to Barsness

22                testimony)), to establish that development of Incredible Pizza Co. (and

23                design) began in late 1998.

24         d.     Application to Register "Incredible Pizza Co. (and design)," dated

25                September 21, 1999, (see <u>Exhibit 6</u> (deposition exhibit P-238 attached

26                to Barsness testimony)), to establish design of original Incredible Pizza

27                Co. (and design) logo and Barsness's false statements to the USPTO

28                regarding ownership and JIPC's prior rights.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

PLAINTIFF JIPC MANAGEMENT, INC.'S
OFFER OF PROOF RE BAD FAITH INTENT          -13-                    CV08-4310 MMM (PLAX)

Portlnd2-4773842.1 0061355-00004

e.   Stock Purchase Agreement by and among The Amarillo Incredible Pizza Company and Richard and Cheryl Barsness for all of the outstanding stock of RPM Productions, Inc., dated October 14, 1999 (see <u>Exhibit 29</u> (exhibit P-243 to Barsness testimony)), to establish that the Barsnesses sold all the shares of RPM, their holding company, to Scott.

f.   Side Letter Agreement between Rick and Cheryl Barsness and Madison and D'Nan Scott, dated October 14, 1999 (see <u>Exhibit 5</u> (deposition exhibit 1 attached to Barsness testimony)), to establish Barsness's knowledge of JIPC's prior use and rights in John's Incredible Pizza Co. and sale of stock in RPM to Madison Scott.

g.   Statement of Use, dated March 23, 2001 (see <u>Exhibit 6</u> (exhibit P-239 attached to Barsness testimony)), to establish Barsness's false statements regarding use of Incredible Pizza Co. (and design) in commerce.

h.   Request for Amendment to Trademark Registration, dated October 21, 2003 (attached as <u>Exhibit 15</u>), to show admission by IPC that the following changes to the Incredible Pizza Co. (and design) mark do not constitute a material alteration:  substituting the wording "Company" for "Co.," changing the typestyle of the term "Incredible" and the wording "Great Food, Fun, Family, & Friends" and adding "an elliptical shape" at the very bottom of the mark.

i.   Response to Petitioner's First Set of Requests for Admission to Registration, dated January 18, 2005 (attached as <u>Exhibit 20</u>), to establish:

(1)   that Barsness was aware as of October 20, 1999 of JIPC's use of the name "John's Incredible Pizza Company"; and

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

PLAINTIFF JIPC MANAGEMENT, INC.'S
OFFER OF PROOF RE BAD FAITH INTENT          -14-          CV08-4310 MMM (PLAX)

Portlnd2-4773842.1 0061355-00004

1     (2)  that the Side Letter Agreement contained no provision for the

2         exercise of control by Barsness over the goods and services to

3         be offered at the Amarillo stores.

4   j.  Response to Petitioner's Second Set of Requests for Admission to

5     Registrant, dated March 17, 2005 (attached as <u>Exhibit 21</u>), to establish:

6     (1)  IPC's claim that as of the time it adopted the Incredible Pizza

7         Co. (and design), "it had no trademark rights in the merely

8         descriptive phrase "Incredible Pizza Company" standing

9         alone.";

10     (2)  the terms of any alleged license granting to Madison Scott the

11         right to use the Incredible Pizza Co. (and design) mark in

12         Amarillo were not reduced to writing at any time between 1999

13         and 2003.

14   k.  Response to Petitioner's Third Set of Requests for Admission to

15     Registrant, dated September 30, 2005 (attached as <u>Exhibit 22</u>), to

16     establish:

17     (1)  The Amarillo take-out store did not use Incredible Pizza Co.

18         (and design) in connection with actual sales of goods and

19         services before October 16, 1999;

20     (2)  The Amarillo sit-down store did not use Incredible Pizza Co.

21         (and design) in connection with actual sales of goods and

22         services before November 2, 1999;

23 //

24 //

25 //

26 //

27 //

28 //

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

PLAINTIFF JIPC MANAGEMENT, INC.'S
OFFER OF PROOF RE BAD FAITH INTENT -15-    CV08-4310 MMM (PLAX)

Portlnd2-4773842.1 0061355-00004

**B.      Incredible Pizza Company Mark.**

In addition to the evidence set forth above, JIPC intends to offer the following evidence:

1.      <u>Documents</u>

a.      Application to Register "Incredible Pizza Company," dated September 15, 2003 (attached as <u>Exhibit 6</u> (exhibit P-238 to Barsness testimony)), to establish that:

(1)      On September 15, 2003, IPC filed an application to register the standard character mark "Incredible Pizza Company" with the USPTO;

(2)      in his declaration in support of the application Barsness stated under penalty of perjury that IPC was using the "Incredible Pizza Co." mark in commerce and to the best of his "knowledge and belief no other person, firm, corporation or association had the right to use the said mark in commerce, either in the identical form or in such near resemblance thereto as may be likely, when applied to the goods of such other person, to cause confusion."

b.      Applicant's Response to Opposer's First Set of Requests for Admission, dated December 11, 2006 (attached as <u>Exhibit 16</u>), to establish IPC's claim that as of April 2004, "it had no trademark rights in the merely descriptive phrase "Incredible Pizza Company" standing alone.

c.      Uniform Franchise Offering Circular ("UFOC") of Incredible Pizza Franchise Group, LLC, dated September 17, 2003 (excerpts attached as <u>Exhibit 17</u>), to establish that:

(1)      in the section captioned "THE FRANCHISOR, ITS PREDECESSORS AND AFFILIATES", IPFG states "We are in

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

PLAINTIFF JIPC MANAGEMENT, INC.'S
OFFER OF PROOF RE BAD FAITH INTENT          -16-          CV08-4310 MMM (PLAX)

Portlnd2-4773842.1 0061355-00004

the business of franchising family entertainment centers including an all-your-can-eat high quality buffet, 50's themed dining, private party rooms and fairgrounds containing games, rides and attractions for all ages of the family. These family entertainment centers ("FEC" or "FECs") will operate under the name 'Incredible Pizza Company' and other names and marks we authorize (the 'Marks').";

(2) in the section captioned "TRADEMARKS", IPFG states "We are aware of a company in California, John's Incredible Pizza Co., which may have operated under the name 'John's Incredible Pizza Company' prior to our use of our Mark and this company may be able to prevent us from operating or franchising FECs in certain areas in which this company is operating, which we understand consists of parts of California.";

d. Applicant's Response to Opposer's Second Set of Requests for Admission, dated April 11, 2007 (attached as <u>Exhibit 18</u>), to establish IPC's contention that it was not aware that JIPC claimed John's Incredible Pizza Co. as a trademark, service mark or trade name separate from the full John's Incredible Pizza Co. All You Can Eat Food & Fun! (and design) mark until IPC learned of JIPC's application to register in September 2004.

e. Applicant's Response to Opposer's Amended First Set of Interrogatories, April 11, 2007 (attached as <u>Exhibit 19</u>), to establish IPC's contention that it was not aware that JIPC claimed John's Incredible Pizza Co. as a trademark, service mark or trade name separate from the full John's Incredible Pizza Co. All You Can Eat Food & Fun! (and design) mark until IPC learned of JIPC's application to register in September 2004.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

PLAINTIFF JIPC MANAGEMENT, INC.'S
OFFER OF PROOF RE BAD FAITH INTENT
-17-
CV08-4310 MMM (PLAX)

Portlnd2-4773842.1 0061355-00004

1  f.  Rodney K. Worrel Letter to Rick Barsness, dated March 16, 2004
2     (attached as Exhibit 24), to establish defendants' knowledge as of
3     March 16, 2004 that JIPC claimed John's Incredible Pizza Co.
4     standing alone as a trademark, service mark or trade name.
5  g.  Petition to Cancel dated May 21, 2004 (attached as Exhibit 25), to
6     establish that IPC was aware as of March 16, 2004 that JIPC claimed
7     John's Incredible Pizza Co. standing alone as a trademark, service
8     mark or trade name.
9  h.  Notice of Publication, dated August 4, 2004 (attached as Exhibit 26),
10    to establish that IPC's application to register "Incredible Pizza
11    Company" was to be published for opposition on August 24, 2004.
12 i.  Express Abandonment, dated August 23, 2004 (attached as Exhibit
13    27), to establish IPC's abandonment of its application to register
14    "Incredible Pizza Company" standing alone one day prior to
15    publication.
16 2. Witness Testimony
17 a.  Plaintiff will offer Rick Barsness, Founder and CEO of Incredible
18    Pizza Co., Inc., through excerpts of depositions taken on March 30,
19    2005 (Attached as Exhibit 5); August 24, 2007 (Attached as Exhibit
20    6); and November 6, 2007 (Attached as Exhibit 7), to testify that
21    Barsness claims IPC abandoned its application to register "Incredible
22    Pizza Company" after it had been approved for publication because
23    IPC's lawyers said IPC did not need it and should stay with its
24    registered logo.
25
26
27
28

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

PLAINTIFF JIPC MANAGEMENT, INC.'S
OFFER OF PROOF RE BAD FAITH INTENT          -18-          CV08-4310 MMM (PLAX)

Portlnd2-4773842.1 0061355-00004

**C.** **America's Incredible Pizza Company Great Food, Fun, Family and Friends (and design) Mark.**

In addition to the evidence set forth above, JIPC intends to offer the following evidence:

1. <u>Documents</u>

    a.    Application to Register "America's Incredible Pizza Company Great Food, Fun, Family and Friends (and design)" dated February 25, 2005 (attached as <u>Exhibit 28</u>), to establish that:

        (1)    On February 25, 2005, IPC filed an application to register "America's Incredible Pizza Company Great Food, Fun, Family and Friends (and design)" with the USPTO;

        (2)    in her declaration in support of the application Cheryl Barsness stated under penalty of perjury that to the best of her "knowledge and belief no other person, firm, corporation or association had the right to use the said mark in commerce, either in the identical form or in such near resemblance thereto as may be likely, when applied to the goods of such other person, to cause confusion.";

2. <u>Witness Testimony</u>

    a.    Plaintiff will offer Rick Barsness, Founder and CEO of Incredible Pizza Co., Inc., through excerpts of depositions taken on March 30, 2005 (Attached as <u>Exhibit 5</u>); August 24, 2007 (Attached as <u>Exhibit 6</u>); and November 6, 2007 (Attached as <u>Exhibit 7</u>), to testify that IPC applied for the America's Incredible Pizza Company trademark because it was expensive and inefficient to do individualized branding for each store.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

PLAINTIFF JIPC MANAGEMENT, INC.'S
OFFER OF PROOF RE BAD FAITH INTENT    -19-    CV08-4310 MMM (PLAX)

Portlnd2-4773842.1 0061355-00004

DATED:  July 27, 2009

STOEL RIVES LLP

By:/s/Steven E. Klein
       RANDOLPH C. FOSTER
       EDWARD C. DUCKERS
       STEVEN E. KLEIN

RUTAN & TUCKER, LLP
       RONALD P. OINES

       Attorneys for Plaintiff
       JIPC Management, Inc.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

PLAINTIFF JIPC MANAGEMENT, INC.'S
OFFER OF PROOF RE BAD FAITH INTENT          -20-          CV08-4310 MMM (PLAX)

Portlnd2-4773842.1 0061355-00004